**Robert MacDONALD, Plaintiff–Appellant,**

v.

**Howard SAFIR, Defendant–Appellee.**

**Docket No. 99–7010**

United States Court of Appeals, Second Circuit.

Argued: Sept. 10, 1999

Decided: March 10, 2000

---

Jerome H. Greenberg, New York, NY, Richard L. Wilson, Orlando, FL, for Plaintiff–Appellant.

Michael D. Hess, Corporation Counsel, New York, N.Y. (Francis F. Caputo, Virginia Waters, Elizabeth I Freedman, of counsel), for Defendant–Appellee.

Before: WALKER and CALABRESI, Circuit Judges, and BERMAN, District Judge.[*]

CALABRESI, Circuit Judge:

Robert MacDonald[2] brought this suit under 42 U.S.C. § 1983, both individually and in his capacity as a member of the Million Marijuana March Organization, challenging the constitutionality of New York City's principal parade permit regulation, § 10–110 of the New York City Administrative Code. *See* New York, N.Y., Admin. Code, tit. 10, ch. 1, § 10–110 (1999). Appellant argues that § 10–110 violates the First Amendment on a number of grounds, and seeks (a) a declaration that § 10–110 is unconstitutional on its face and (b) an injunction permanently barring Commissioner Safir, the administrator of § 10–110, from enforcing it. The district court (Leonard B. Sand, *Judge*) found in favor of the Commissioner on the claims that are relevant to this appeal. Because we conclude that the district court's holding cannot be supported on the current record before us, we vacate the court's judgment and remand the case for further proceedings.

## BACKGROUND

For the past twenty-five years, the Million Marijuana March and related organizations such as Cures Not Wars have annually paraded through New York in early May in support of their cause, the legalization of marijuana. *See Beal v. Stern,* 184 F.3d 117, 121 (2d Cir.1999). Both Robert MacDonald and the newly substituted Bonnie Tocwish were actively involved in seeking parade permits on behalf of these organizations and had participated in the events. In fact, immediately before this suit was filed, Appellant had applied to the New York City Police Department for a permit. The application requested permission to parade up Fifth Avenue from Washington Square Park to Central Park at 96th Street on May 2, 1998. The Police Department denied a permit for Appellant's proposed route but offered an alternate route for the parade.

Appellant then filed this suit, arguing that § 10–110 was unconstitutional on its face. Section 10–110 provides the following rules for the granting of parade permits in New York City:

a. Permits. A procession, parade, or race shall be permitted upon any street or in any public place only after a written permit therefor has been obtained from the police commissioner. Application for such a permit shall be made in writing, upon a suitable form prescribed

---

[*] The Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

**2.** While this appeal was pending, Mr. MacDonald died. His lawyers filed a motion in this court, unopposed by Commissioner Safir, to substitute Bonnie Tocwish and Cures Not Wars in MacDonald's place. We grant this motion to substitute. *See* Fed. R.App. P.

43(a)(1) (if a party dies and there is no personal representative to act on his behalf, the court may take such action as it deems appropriate); *see also Ward v. Edgeton,* 59 F.3d 652, 652 (7th Cir.1995). To avoid any confusion that might be caused by referencing the current party names instead of MacDonald, we will refer to the new parties representing the plaintiff's side collectively as "Appellant."

and furnished by the department, not less than thirty-six hours previous to the forming or marching of such procession, parade or race. The commissioner shall, after due investigation of such application, grant such permit subject to the following restrictions:

1. It shall be unlawful for the police commissioner to grant a permit where the commissioner has good reason to believe that the proposed procession, parade or race will be disorderly in character or tend to disturb the public peace;

2. It shall be unlawful for the police commissioner to grant a permit for the use of any street or any public place, or material portion thereof, which is ordinarily subject to great congestion or traffic and is chiefly of a business or mercantile character, except, upon loyalty day, or upon those holidays or Sundays when places of business along the route proposed are closed, or on other days between the hours of six thirty post meridian and nine ante meridian;

3. Each permit shall designate specifically the route through which the procession, parade or race shall move, and it may also specify the width of the roadway to be used, and may include such rules and regulations as the police commissioner may deem necessary;

4. Special permits for occasions of extraordinary public interest, not annual or customary, or not so intended to be, may be granted by the commissioner for any street or public place, and for any day or hour, with the written approval of the mayor;

5. The chief officer of any procession, parade or race, for which a permit may be granted by the police commissioner, shall be responsible for the strict observance of all rules and regulations included in said permit.

b. Exemptions. This section shall not apply:

1. To the ordinary and necessary movements of the United States army, United States navy, national guard, police department and fire department; or

2. To such portion of any street as may have already been, or may hereafter be duly, set aside as a speedway; or

3. To processions or parades which have marched annually upon the streets for more than ten years, previous to July seventh, nineteen hundred fourteen.

c. Violations. Every person participating in any procession, parade or race, for which a permit has not been issued when required by this section, shall, upon conviction thereof, be punished by a fine of not more than twenty-five dollars, or by imprisonment for not exceeding ten days, or by both such fine and imprisonment.

New York, N.Y., Admin. Code, tit. 10, ch. 1, § 10–110. Appellant argued that this regulation is unconstitutional on its face because:

A. The Ordinance allows the Police Commissioner to grant or deny a permit for a parade in his/her unfettered discretion;

B. The Ordinance allows the Police Commissioner to deny a permit for an improper reason—a belief that the parade may be "disorderly in character."

C. The Ordinance does not require that the decision to grant or deny the permit be issued within a specified brief period of time;

D. The Ordinance fails to provide for prompt judicial review in the event a parade permit is denied;

E. The Ordinance does not require the Commissioner to state the specific reasons for a decision to deny a permit, thus making judicial review meaningless; and

F. The Ordinance fails to require the Commissioner to seek judicial review if a permit application is denied, and fails to require that the Commissioner bear the burden of justifying the denial in the judicial proceeding.

Complaint ¶ 21, *reprinted in* Joint Appendix ("JA") at 10–11 (footnote omitted). Commissioner Safir responded to Appellant's complaint by filing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court granted the Commissioner's motion to dismiss all claims against him, save one regarding the absence of time limits in the ordinance. *See MacDonald v. Safir*, No. 98 Civ. 2332(LBS), 1998 WL 318690 (S.D.N.Y. June 16, 1998), *reprinted in* JA 92–103. It later granted summary judgment in favor of Appellant on that claim, holding that the absence of an explicit time frame for the City to process and respond to requests for a parade permit was unconstitutional under *Freedman v. Maryland*, 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *See MacDonald v. Safir*, 26 F.Supp.2d 664, 673–77 (S.D.N.Y.1998). As a result of that decision, the police department's Administrative Guidelines were amended to require, as of November 1998, a response from the police department on the status of the permit within 45 days prior to the event, if the permit application was filed 90 or more days prior to the event. Neither the district court's ruling on this claim nor the new guideline governing the time for processing parade permits is a subject of this appeal.

Instead, the Appellant contends that the district court erred in finding that § 10–110 did not violate the First Amendment on the three other principal grounds it had asserted in its complaint. That is, Appellant maintains that the ordinance still violates the First Amendment because (1) it vests overbroad discretion in the Police Commissioner, (2) it does not provide the required judicial review, and (3) it fails to require the Police Commissioner to bear the burden of going to court when he suppresses speech.

## ANALYSIS

### A. Procedural Issues

Before we turn to the merits of the case before us, we must deal with two procedural matters. The first is whether Appellant may properly bring this suit. The second is whether the judgment on appeal was entered under Rule 12(b)(6) or Rule 56.

#### 1. May Appellant Properly Bring This Suit?

 Although the Commissioner had not questioned the propriety of allowing Appellant to bring this facial challenge, *see MacDonald*, 1998 WL 318690, No. 98 Civ. 2332(LBS), *reprinted in* JA 97, at oral argument, we asked whether Appellant had standing to attack that portion of the ordinance that allows the Commissioner, with the mayor's approval, to issue special permits (i.e., permits allowing groups to march on "any day or hour" if the occasion is one of "extraordinary public interest," *see* § 10–110(a)(4)), there being no evidence regarding this special permitting process submitted or discussed below. As a general matter, we are obligated to determine whether Appellant has the requisite standing, since our jurisdiction to consider even specific parts of a case depends on it. *See United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). We conclude that Appellant may bring this chal-

lenge to § 10–110 in its entirety and that we have jurisdiction to hear it.

■ As the Supreme Court said in *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), "a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Id.* at 759, 108 S.Ct. 2138. Moreover, "one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *Id.* at 755–56, 108 S.Ct. 2138.

■ This does not mean that a facial challenge will always lie, for "[t]he law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *Id.* at 759, 108 S.Ct. 2138. There can, however, be no doubt that § 10–110, by regulating permits for parades in New York City, has a close nexus to "conduct commonly associated with expression." *Id.* at 759, 108 S.Ct. 2138; *cf. Beal*, 184 F.3d at 126. And the principal thrust of Appellant's complaint is precisely that the Police Commissioner is vested with unbridled discretion under § 10–110, which, if true, poses real censorship risks.

While, therefore, Appellant need not have applied for and staged parades in New York City in the past to satisfy the requirements of *Lakewood*, the fact that it has done so is helpful, as it indicates that Appellant has been and will continue to be subject to this ordinance. As a result, Appellant is injured by the law if the law violates the First Amendment. Furthermore, the injury claimed by Appellant is traceable to the Commissioner's conduct under the regulation, and it could be redressed were we to find the regulation unconstitutional. *See Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130 (a litigant must show that it has suffered a particularized injury to a cognizable interest, which is fairly traceable to the actions of the defendant, and that a favorable judicial decision will redress the injury). We readily conclude that Appellant has satisfied all of the requirements for bringing a facial challenge to the bulk of this ordinance.

■ We reach the same conclusion with respect to § 10–110(a)(4). Admittedly, it was not clear from the record below whether the Commissioner had ever granted or denied a special permit to a group, such as that represented by the Appellant, that had actually applied for a permit through the regular permitting process. Because, however, under *Lakewood*, there is no need for a party actually to apply or to request a permit in order to bring a facial challenge to an ordinance (or parts of it) on the ground that the ordinance gives the regulating entity unbridled discretion, such evidence is not required. In this case, Appellant alleges that the Commissioner is afforded unlimited discretion by the special permit portion of the law. Appellant has, in addition, shown that it often has parades and is therefore subject to that portion of the law. Nothing more is needed for a facial challenge.

### 2. Rule 12(b)(6) or Rule 56?

The next question is whether the district court entered its judgment with respect to the claims at issue here as a dismissal under Rule 12(b)(6) or as a grant of summary judgment under Rule 56. The answer to this question affects the standard of review we employ.

The first district court opinion in this litigation was issued after the defendant moved for dismissal under Rule 12(b)(6). *See MacDonald*, 1998 WL 318690, No. 98 Civ. 2332(LBS), *reprinted in* JA 92–103. In that opinion, the court ruled on all of the claims that are currently before us. *See id.* at 103. The trial court then went on to decide the remaining issues in the case on a motion for summary judgment. *See MacDonald*, 26 F.Supp.2d at 677. Acting on that motion, the court entered a

final order, and in that final order, the court discussed only the grant of summary judgment in *Appellant's favor* with respect to these latter claims. *See* JA 140. It did not mention the previous dismissal of Appellant's other claims. *See id.*

Apparently to ensure that it be made clear to this court that judgment had been issued with respect to all claims and therefore was appealable, the Appellant requested the district court to amend the final judgment in the case to reflect the disposition of the claims that had been dismissed earlier. *See id.* at 141–44. And this is where we run into trouble, for the orders filed by the court in response to the Appellant's request indicate that, on the claims before us, *summary judgment* had been granted in favor of the defendant, instead of confirming that these claims were dismissed following a Rule 12(b)(6) motion. *See id.*

 The difficulty is that our standard of review is quite different for these two types of judgments. A Rule 12(b)(6) dismissal cannot stand if the Appellant could conceivably adduce facts that supported the cause of action brought in the complaint. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A summary judgment will be upheld, instead, where there is no genuine issue of material fact and the lower court has decided the case correctly as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This means that it is quite possible to reach the opposite result in the same case, depending on the applicable standard of review. Because, however, the judgment in *this* case cannot be upheld

under either standard, we need not decide whether Rule 12(b)(6) or summary judgment standards govern.

The basis for our remand is that there is not enough evidence in the record regarding the practices of the police department in granting parade permits to determine whether the ordinance is unconstitutional. That is, if we treat this as a dismissal under Rule 12(b)(6), which is what we believe the district court actually ordered in this case, dismissal would not be warranted because it does not "appear[ ] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. "In ruling on such a motion, the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint, to assume all well-pleaded factual allegations to be true, and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff." *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999) (citations omitted). Since, as we discuss below, Appellant may be able to prove facts that support its claims, the trial court erred in dismissing the claims under Rule 12(b)(6).

Moreover, although it appears that the district court simply misstated when it indicated in the amended final judgment that it had granted *summary judgment* with respect to the claims that are the subject of the instant appeal,[3] it is clear that a grant of summary judgment in favor of the defendant was at least premature. As we shall see, the record is simply not adequately developed to support the district

---

**3.** We note that, because the Appellant requested a preliminary injunction, affidavits and other evidence were submitted by both sides. The district court denied Appellant's request for an injunction before making its decision on the Commissioner's motion to dismiss. It therefore was aware of these materials. One could, as a result, argue that the evidence found in those submissions should be considered by this court in evaluating the constitutionality of the ordinance. But it does not appear that the district court considered this evidence in its decision. In any event, the evidence that was submitted in response to the preliminary injunction request is not enough to sustain the district court's finding of constitutionality, *see infra,* because it did not suffice to establish the Commissioner's practices and procedures with respect to § 10–110.

court's ruling, even if we consider that ruling to be a judgment that goes beyond the face of the complaint. *See In re Breast Implant Cases,* 942 F.Supp. 958, 961 (E.D.N.Y.1996) ("In cases where additional information is required to adequately pass on a motion for summary judgement, the practice has been to deny the motion, with leave to renew, allowing further discovery and development of evidence.").

Accordingly, it does not matter if we view the district court's holding as having been made in response to a Rule 12(b)(6) motion or to a summary judgment motion under Rule 56.

## B. Merits

Appellant claims that the ordinance (1) grants the Police Commissioner impermissible discretion in deciding who gets a permit, (2) fails to provide for prompt judicial review, and (3) fails to require the Police Commissioner to seek judicial review and to bear the burden for such a review. It further argues that the court lacked sufficient evidence to support its ruling as to all three of these claims and that its ruling was, therefore, premature. In this latter respect, we note that the opinion in *Beal,* which speaks directly to the question of prematureness in First Amendment prior restraint cases, had not yet been filed when the district court issued judgment on the claims that are now on appeal. We begin with Appellant's claim regarding the alleged discretion of the Commissioner in granting parade permits.

### 1. Discretion of the Commissioner Under § 10–110

Appellant contends that § 10–110 impermissibly vests the Police Commissioner with unbridled discretion in two respects. First, the Commissioner must deny the permit where he "has good reason to believe that the proposed procession, parade or race will be disorderly in character or tend to disturb the public peace." § 10–110(a)(1). Second, the Commissioner may also approve "[s]pecial permits for occasions of extraordinary public interest" if the mayor has provided written approval of the event. § 10–110(a)(4). The Commissioner counters that there are valid limits to his discretion under each of these provisions in the form both of administrative guidelines and of established practices of his office. As a result, he argues, the ordinance does not violate the First Amendment.

■ When evaluating a First Amendment challenge of this sort, we may examine not only the text of the ordinance, but also any binding judicial or administrative construction of it. And we are permitted—indeed, required—to consider the well-established practice of the authority enforcing the ordinance. *See Forsyth County v. Nationalist Movement,* 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). All of these are essential as we try to make our way through the Scylla of regulations that are so tightly worded that the flexibility needed for administration is lacking, and the Charybdis of language so loose that, as a practical matter, courts become the licensing bureau.[4]

**4.** At least with respect to New York City, the federal courts have recently had to assume this role with some frequency. *See, e.g., Million Youth March, Inc. v. Safir,* 155 F.3d 124 (2d Cir.1998) (upholding injunction of district court requiring Commissioner to issue a parade permit to the group); *Bery v. City of New York,* 97 F.3d 689 (2d Cir.1996) (finding unconstitutional the City's limitation on licenses for sidewalk artists), *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997); *Million Youth March, Inc. v. Safir,* 63 F.Supp.2d 381 (S.D.N.Y.1999) (again grant-

ing preliminary injunction requiring Commissioner to issue a parade permit to group); *Gasparo v. City of New York,* 16 F.Supp.2d 198 (E.D.N.Y.1998) (preliminarily enjoining City's concession scheme for newsstands in light of likelihood that City's unlimited authority to terminate concessions would chill protected speech); *Housing Works, Inc. v. Safir,* No. 98 Civ.1994(HB), 1998 WL 823614 (S.D.N.Y. Nov.25, 1998) (granting preliminary injunction to allow group to hold a press conference on the steps of City Hall and to

On appeal, the Commissioner in his brief points to a great deal of evidence regarding his practices and administration of the parade permitting scheme under § 10–110. *See, e.g.,* Safir Brief at 36–37 (discussing specific instances in which permits have not been denied even though the applicant's cause may be unpopular or members of the applicant's group may have been arrested in prior years during a parade). He asserts that this information should be considered under the *Forsyth County* line of cases in assessing the constitutionality of the ordinance.

Apart from the fact that this evidence does not address the challenge to § 10–110(a)(4),[5] the fact remains that most of the evidence that the Commissioner presents to us now was not before the district court when it rendered its judgment on these claims. And, significantly, the district court made no reference whatsoever to the practices or guidelines of the Commissioner in its decision, but appears to have looked only to the text of the ordinance. *See MacDonald,* 1998 WL 318690, No. 98 Civ. 2332(LBS), *reprinted in* JA 99–100.

■ The language of § 10–110, standing alone, is not, however, "sufficiently precise to survive the facial challenge." *Turley v. Police Dep't of New York,* 167 F.3d 757, 762 (2d Cir.1999). Indeed, as Appellant suggests, both § 10–110(a)(1), which allows the Commissioner to deny a permit if he believes the parade "will be disorderly in character or tend to disturb the public peace," and § 10–110(a)(4), which permits the Commissioner to grant a parade permit for any "occasion[ ] of extraordinary public interest, not annual or customary," unless constrained by administrative construction or by well-established practice, appear to afford the Commissioner exactly the sort of discretion that has been found to violate the First Amendment.[6] *See Lakewood,* 486 U.S. at 769–70, 108 S.Ct. 2138 (finding discretion to be impermissibly unfettered where an ordinance allowed the Mayor to deny a license for "such other terms and conditions deemed necessary" by him); *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 156–58, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (finding that the ordinance on its face allowed too much discretion because the decision could be made based on such things as decency, good order, and morals); *cf. Beal,* 184 F.3d at 126–27 (finding that the licensing party had discretion un-

---

parade in support of its cause), *stay granted in part,* 1998 WL 824534 (2d Cir. Nov.30, 1998) (order issuing partial stay later withdrawn); *United Yellow Cab Drivers Ass'n v. Safir,* No. 98 Civ. 3670(RPP), 1998 WL 274295 (S.D.N.Y. May 27, 1998) (finding unconstitutional the City's refusal to permit more than 20 taxi drivers to participate in a protest against proposed rules for pick-up and drop-off).

5. The Commissioner suggests that § 10–110(a)(4), since it does not allow the denial of permits but instead grants marchers a special benefit, i.e., the right to march at any time, cannot be challenged by those who are not given the benefit. But that argument is unpersuasive. The government may not favor certain speech based on its content. *See Turley v. Police Dep't of City of New York,* 167 F.3d 757, 761 (2d Cir.1999). For example, if a censor has the discretion to allow the political party of his or her choice the right to broadcast on prime time, while relegating other parties to the early morning hours, that

discretion surely would be subject to challenge. And so it is with § 10–110(a)(4).

6. The Commissioner made many assertions with respect to the phrase "will be disorderly in character or tend to disturb the public peace." For instance, he contended that the phrase did *not* bar the issuance of permits to those whose parades had been disruptive in the past. Apart from the problem that much of this "evidence" was not before the district court, the fact remains that the more the Commissioner tried to explain his well-established practice with respect to the ordinance, the more vague the language seemed to be. We take no stand on the question of whether past behavior can justify a denial of a future permit. But there can be no doubt that once the Commissioner abandons past behavior as an indicium of future disorderliness, the basis for the Commissioner's belief that any given march will disturb the peace becomes all the more uncertain, and hence all the more constitutionally suspect.

der the language of the challenged rules and thus it was important to examine the practice of the licensing body because "[t]his limiting construction is critical to the validity of the [challenged r]ules on a facial challenge"). It follows that the district court's judgment, as currently based, cannot stand.

Our conclusion that the ordinance is not sufficiently precise on its face to pass constitutional muster does not, however, mean that Appellant wins. It only means that the decision below was premature. The case must therefore return to the district court for the submission of further evidence—by both sides—regarding the Commissioner's practices and guidelines associated with parade permitting under § 10–110. It may well be, after all of the necessary evidence has been submitted and all the factual disputes are resolved, that the court will find that the ordinance does not vest overbroad discretion in the Commissioner. *See Turley,* 167 F.3d at 762 (upholding an ordinance that allowed the police to set the maximum volume on sound permits based on what was "necessary, for the purpose of securing the health, safety, comfort, convenience and peaceful enjoyment" after considering the practices and standards that had been established for permitting under the ordinance). On the other hand, the district court may find, after the resolution of all factual disputes and upon consideration of the practices and guidelines, that at least some part of the ordinance vests unlawful discretion in the Commissioner. The court might then require, as it did with respect to the time limits issue, the Commissioner to devise new guidelines or standards to correct the problem.

It is even possible, once affidavits and parade permitting records are received, that no genuine questions of material fact will remain. In that case, summary judgment or judgment as a matter of law may

properly issue for one of the parties. But on the record before us, we simply cannot know at this time the proper result.

In this respect, this case is the obverse of *Beal* and is governed by it. In *Beal,* the plaintiffs argued that certain park-permit rules were facially unconstitutional and therefore asked for a preliminary injunction barring the New York City Parks and Recreation Department from enforcing the rules. The district court denied the request, and we affirmed that decision because the record was inadequate to show the clear likelihood of success on the merits needed to support the injunction.[7] *See Beal,* 184 F.3d at 122, 130; *see also id.* at 127 ("There is evidence in the record that would support the Parks Department's claim that its practice is to permit alternative locations, although there is also evidence to the contrary. Because the record on this issue is unclear, we cannot conclude that appellants have shown a clear likelihood of success on the merits.").

As we also made clear in *Beal,* however, "nothing we say should be construed to express any opinion as to whether, on a more complete record, appellants will succeed in establishing that the [challenged r]ules are facially invalid under the First Amendment." *Id.* at 130. And we remanded the case for further proceedings, stating our belief that "the merits of this dispute would best be resolved by a proceeding in which a complete record is made as, for example, suggested in Fed. R.Civ.P. 65(a)(2)." *Id.* The same is true in the instant case except that here the inadequacy of the record means that there is not enough before us to support a judgment for the defendant. We therefore remand these claims for further factfinding on the practices of the Commissioner to determine if the ordinance violates the First Amendment.

---

7. In *Beal,* the "clear" likelihood of success standard was the proper one because the injunction sought would have stayed governmental action and significantly changed the positions of the parties. *See Beal,* 184 F.3d at 123.

### 2. Judicial Review Under § 10–110

Appellant also argues that § 10–110 violates the First Amendment because it (1) fails to provide for prompt judicial review, and (2) fails to require the Police Commissioner to seek judicial review and to bear the burden in such a review. Again, we find that the district court decided both of these issues prematurely and remand them for more evidence.

■■■■ Under *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), if the ordinance is a "prior restraint" on speech, certain procedural safeguards must be in place in order for the restraint to be lawful under the First Amendment. *See id.* at 58–60, 85 S.Ct. 734; *see also FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality opinion) (citing *Freedman,* 380 U.S. at 58–60, 85 S.Ct. 734). The district court correctly found that § 10–110 is a prior restraint on speech, for, under § 10–110, one must get a permit from the Commissioner before staging a parade in New York City. And as we held in *Beal,* if rules "condition the exercise of expressive activity on official permission . . . they . . . constitute a 'prior restraint' on speech." *Beal,* 184 F.3d at 124. We must therefore determine whether the procedural safeguards required by *Freedman* are present.

In *Freedman,* the Supreme Court mandated three safeguards to "ensure expeditious decisionmaking by" the governing body in such cases: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS, Inc.,* 493 U.S. at 227, 110 S.Ct. 596. As discussed above, the district court earlier granted summary judgment in favor of Appellant on its claim with respect to the first *Freedman* factor, and, as a result, the

police department guidelines have been amended. Review of that ruling is not before us; today we are asked, instead, to decide whether the ordinance satisfies the second and third *Freedman* factors.

■■■■ The district court held that the second *Freedman* safeguard requiring the availability of expeditious review was satisfied because of the availability of an Article 78 proceeding in New York state courts. Appellant argues that this mechanism is insufficient to meet the requirement.

We held in *Beal* that "prompt access to judicial review in state courts would satisfy *Freedman.*" *Beal,* 184 F.3d at 129. We did not, however, consider in that case whether an Article 78 proceeding in particular satisfied the requirement. Instead, we held that there was not enough evidence in the record to permit us to say that such a proceeding was *in* sufficient to afford the plaintiffs the required judicial access. *See id.* at 122. Accordingly, we could not say that the plaintiffs would very likely win on the merits. And, as a result, a preliminary injunction for them could not issue. But, as mentioned above, we expressed no view "as to whether, on a more complete record, appellant [would] succeed in establishing that the [challenged r]ules are facially invalid under the First Amendment." *See id.* at 130; *accord Gasparo v. City of New York,* 16 F.Supp.2d 198, 214 (E.D.N.Y.1998) (in a First Amendment challenge to a newsstand concession scheme, the court undertook a thorough analysis of the issues raised with respect to an Article 78 proceeding and concluded that "while plaintiffs' claim is not wholly without merit," the plaintiffs had simply not provided sufficient ground to support a finding that they were likely to succeed on the merits).

■■■■ This case presents, albeit in a different posture, precisely the same problem we faced in *Beal.* And, as in *Beal,* without more evidence, any judgment that depends on a finding that an Article 78 proceeding

provides, or fails to provide, the requisite expeditious review is premature. In *Beal,* this meant that a preliminary injunction barring enforcement of the rules could not issue; here it means that summary judgment in favor of the Commissioner cannot stand.[8] But the underlying principle is the same in both cases: on the limited evidence before us here, we cannot evaluate whether Article 78 proceedings are adequate to meet the second *Freedman* requirement. We therefore remand this case to enable the district court to conduct a thorough investigation of the Article 78 proceeding and, after doing so, to evaluate whether that proceeding provides the "prompt judicial review" mandated by the Supreme Court in *Freedman* and *FW/PBS.*

■■■ The third *Freedman* safeguard seems to demand that the Commissioner bear the burden of going to court to suppress the speech and the risk of non-persuasion once there. In *FW/PBS,* however, a plurality of the Court sought to limit this broad *Freedman* requirement to those situations in which "the censor engaged in direct censorship of particular expressive material." *FW/PBS,* 493 U.S. at 229, 110 S.Ct. 596. Because the city in *FW/PBS* did "not exercise discretion by passing judgment on the content of any protected speech" with respect to the portion of the ordinance at issue, *id.,* the plurality stated that "the First Amendment does not require that the city bear the burden of going to court to effect the denial of a license application or that it bear the burden of proof once in court." *Id.* at 230, 110 S.Ct. 596.

■■■ In this case, the Commissioner claims that there is no direct censorship because he has no discretion under the ordinance. Rather, he claims that, like the parties who succeeded in defending the relevant part of the ordinance in *FW/PBS,* he only "reviews the general qualifications of each license applicant, [which is]

a ministerial action." *Id.* If, in fact, the Commissioner "does not exercise discretion by passing judgment on the content of any protected speech," *id.,* there may well be no need for the Commissioner to bear the burden of going to court when a permit is denied. *See Beal,* 184 F.3d at 128 (finding that, for the purposes of determining whether a preliminary injunction would issue, the challenged regulations were content-neutral and therefore needed to comply only with the first two *Freedman* factors).

■■■ But we are not able, on the present record, to determine whether the Commissioner actually does "exercise discretion by passing judgment on the content of any protected speech." *FW/PBS,* 493 U.S. at 229, 110 S.Ct. 596. And in fact, the resolution of this issue is closely tied to Appellant's first claim that the Commissioner is afforded unconstitutional discretion under both § 10–110(a)(1) and § 10–110(a)(4). The level of discretion sufficient to place the burdens on the Commissioner—under *Freedman*—need not be so unbridled that it violates the First Amendment directly. Nevertheless, the degree of discretion matters to each. And without more evidence regarding the discretion that is afforded to the Commissioner under the ordinance, "including [the Commissioner's] own implementation and interpretation of it," *Forsyth County,* 505 U.S. at 131, 112 S.Ct. 2395, we cannot decide who should bear the burden of going to court when a permit is denied and of convincing the factfinder once there.

We therefore remand this claim too for further fact-gathering. And because it is closely related to the challenges to § 10–110(a)(1) and (4), we hold that any evaluation of this claim should—like those challenges—be made in light of all the evidence presented regarding the Commissioner's practices.

---

**8.** And *a fortiori* a Rule 12(b)(6) dismissal also cannot stand.

## CONCLUSION

Because we find that the district court's decision was premature with respect to whether § 10–110 violates the First Amendment (1) by granting the Police Commissioner impermissible discretion in deciding who gets a permit under § 10–110, (2) by not providing for adequate prompt judicial review, and (3) by failing to require the Police Commissioner to seek judicial review and to bear the burden for such a review, we VACATE the judgment in favor of Commissioner Safir and RE-MAND these claims for further proceedings consistent with this opinion.