# United States Court of Appeals
## For the First Circuit

No. 13-2087

VAN WAGNER BOSTON, LLC AND
VAN WAGNER COMMUNICATIONS, LLC,

Plaintiffs, Appellants,

v.

RICHARD A. DAVEY AND EDWARD J. FARLEY, IN THEIR
OFFICIAL CAPACITIES; MASSACHUSETTS DEPARTMENT OF TRANSPORTATION;
AND MASSACHUSETTS OFFICE OF OUTDOOR ADVERTISING,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Selya and Lipez,
Circuit Judges.

Henry C. Dinger, with whom Michael K. Murray, E. Abim Thomas, and Goodwin Procter LLP were on brief, for appellants.
Sookyoung Shin, Assistant Attorney General, with whom Martha Coakley, Attorney General, was on brief, for appellees.

October 20, 2014

**SELYA, Circuit Judge.** First Amendment rights are fragile, and it is not only the occasional abuse of censorship power but also the threat inherent in the existence of that power that may chill protected expression. Where those risks exist to a significant degree, facial challenges to the grant of such authority may be mounted.

In this case, the plaintiffs (related companies engaged in the business of erecting and displaying billboards and other outdoor signage) undertook a facial challenge to a state permitting scheme. The district court dismissed their First Amendment claim for lack of standing. See Van Wagner Commc'ns, LLC v. Mass. Dep't of Transp., 953 F. Supp. 2d 313, 316-19 (D. Mass. 2013). After careful consideration, we conclude that the complaint plausibly alleges that the plaintiffs are subject to a regulatory permitting scheme that grants an official unbridled discretion over the licensing of their expressive conduct and poses a real and substantial threat of censorship. No more is exigible to give the plaintiffs standing to proceed with their challenge. Because the district court erroneously dismissed the plaintiffs' First Amendment claim for lack of standing, we reverse.

## I. BACKGROUND

Massachusetts has long regulated the display of billboards and other outdoor signage. Van Wagner challenges the Commonwealth's most recent regulatory scheme, which was enacted in

-2-

2012.  A scheme similar to the one now in effect has existed since 2008.[1]

The challenged regulatory scheme requires most parties wishing to engage in outdoor advertising to obtain a license in advance.  See 700 Mass. Code Regs. 3.02(1).  Such parties must also (with some exceptions) obtain a permit for each sign.  See id. § 3.02(2)(a); see also id. § 3.02(2)(b) (limning exceptions for, inter alia, on-premise signs, on-property for sale or for rent signs, artistic signs, and signs "erected solely for . . . public elections").  The regulations vest the authority to issue such licenses and permits in the Director of the Commonwealth's Office of Outdoor Advertising (the Director), see id. § 3.01, and provide that he may withhold a permit, in his sole discretion, upon a determination that the particular sign "would not be in harmony with or suitable for the surrounding area or would do significant damage to the visual environment," id. § 3.07(4).  In making such determinations, the Director "may" consider an array of enumerated factors, including (but not limited to) the physical characteristics of both the proposed sign and the locality; the effects on scenic beauty; and "the health, safety and general welfare of the public."  Id.

_____

[1] The parties dispute the extent to which the 2012 iteration of the regulatory scheme effected a meaningful change in preexisting procedure.  This appeal does not require us to enter into the merits of this dispute.

-3-

When issued, a permit is for a fixed duration and is subject to annual renewal based on the same criteria. See id. §§ 3.02(2)(c), 3.08(3). It is, moreover, subject to revocation at any time for cause. See id. §§ 3.03(2)(d), 3.09(2). The regulations provide an illustrative list of grounds constituting cause for the revocation of a permit. See id. §§ 3.03(2)(d), 3.09(2)(a)-(e) (listing, as examples, noncompliance with state and federal law; actions having an adverse effect on "the public health, safety, welfare or the environment"; submission of false or misleading information; and refusal to submit requested information). Nevertheless, this list is non-exclusive, and the regulations emphasize that the Director's revocation authority is "[w]ithout limitation." Id. The regulations grant the Director similarly broad authority to revoke a billboard owner's license. See id. §§ 3.03(1)(b), 3.09(2).

This new permitting scheme did not please all comers. Van Wagner Boston, LLC is a wholly owned subsidiary of Van Wagner Communications, LLC, which is the fourth largest outdoor advertising company in the United States. These two entities (collectively, Van Wagner) had lobbied unsuccessfully against the 2012 amendments to the regulatory scheme and, when those amendments were adopted, sought relief from them. To this end, Van Wagner brought suit in the United States District Court for the District

-4-

of Massachusetts against state agencies and officials charged with administering the regulations (collectively, the Commonwealth).

The complaint invoked 42 U.S.C. § 1983 and sought a declaration that the regulations imposed a prior restraint on, and therefore violated, Van Wagner's free speech rights under the First and Fourteenth Amendments.[2]  It also alleged that the regulations were infirm on various state-law grounds.

The Commonwealth moved to dismiss for lack of subject-matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  The district court obliged: it jettisoned the First Amendment claim for want of standing and declined to exercise supplemental jurisdiction over the state-law claims.  See Van Wagner, 953 F. Supp. 2d at 318-19.  This timely appeal followed.

## II.  STANDING

This appeal raises only "pure (or nearly pure) questions of law" and, thus, engenders de novo review.  Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  In carrying out this review, "we take as true all well-pleaded facts in the plaintiffs' complaint[], scrutinize them in the light most hospitable to the plaintiffs' theory of liability, and draw all

---

[2]  In addition to the section 1983 count, the complaint contained a parallel count brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  The district court dismissed this count on the ground that the Declaratory Judgment Act provides no independent basis for federal jurisdiction.  See Van Wagner, 953 F. Supp. 2d at 316.  Van Wagner has not challenged this ruling.

-5-

reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). "Where, however, those facts are illuminated, supplemented, or even contradicted by other materials in the district court record, we need not confine our jurisdictional inquiry to the pleadings, but may consider those other materials." Aguilar v. U.S. ICE, 510 F.3d 1, 8 (1st Cir. 2007).

The Constitution confines federal courts to the adjudication of actual cases and controversies. See U.S. Const. art. III, § 2; see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). This circumscription must be taken seriously: ascertaining whether a matter is a case or controversy within the meaning of Article III "assumes particular importance in ensuring that the Federal Judiciary respects the proper — and properly limited — role of the courts in a democratic society." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). After all, "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." Id.

A fundamental component of an Article III case is that the plaintiff has standing to press its claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum of standing" requires that the plaintiff has

-6-

suffered an injury in fact, that this injury was caused by the conduct complained of, and that the relief sought is likely to redress the injury suffered. See id. at 560-61; Katz v. Pershing, LLC, 672 F.3d 64, 71-72 (1st Cir. 2012). The party invoking federal jurisdiction bears the burden of establishing each of the three elements required for standing. See Lujan, 504 U.S. at 561; McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003). The only debatable question regarding Van Wagner's standing involves the first element, that is, whether Van Wagner has sufficiently alleged an injury in fact.

The district court answered this injury-in-fact question in the negative. See Van Wagner, 953 F. Supp. 2d at 316-18. According to the Commonwealth, Van Wagner had applied for more than seventy permits since November of 2009 without having had a single application denied.[3] Van Wagner challenges the district court's conclusion, asserting that it is subject to a regulatory scheme that gives the Director unbridled discretion with respect to licensing its expressive conduct and that being subject to such a standardless regime is itself a cognizable injury under the

---

[3] Van Wagner alleges that several months after the district court entered its order of dismissal, the Commonwealth rejected one of its permit applications. For present purposes, this denial is an irrelevancy. An inquiry into standing must be premised on the facts existing at the time suit was commenced. See Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006).

-7-

doctrine announced in <u>City of Lakewood</u> v. <u>Plain Dealer Publishing Co.</u>, 486 U.S. 750 (1988).

An injury in fact must be both "concrete and particularized and actual or imminent, not conjectural or hypothetical." <u>Susan B. Anthony List</u> v. <u>Driehaus</u>, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks omitted). With regard to facial First Amendment challenges to laws imposing prior restraints on constitutionally protected expression, those requirements have been given a special gloss. In <u>City of Lakewood</u>, the Supreme Court confronted a municipal ordinance that was alleged to vest the mayor with unbridled discretion to grant or deny permits for the placement of newsracks on city property. <u>See</u> 486 U.S. at 753-55. Though the plaintiff there (a newspaper publisher) had not yet applied for any permits, the Court nonetheless allowed it to mount a facial challenge to the ordinance. <u>See</u> <u>id.</u> at 754-55. The Court reasoned that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." <u>Id.</u> at 755-56 (citing, inter alia, <u>Freedman</u> v. <u>Maryland</u>, 380 U.S. 51, 56 (1965)).

The Court voiced two salient concerns about laws that cede unfettered discretion to government officials over "expression, or . . . conduct commonly associated with expression."

-8-

Id. at 759. For one thing, such schemes may prompt regulated parties to self-censor their speech out of, say, a desire "to receive a favorable and speedy disposition on [a] permit application." Id. at 758. For another thing, without clear standards "post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression." Id. These concerns undergirded the Court's conceptualization of injury sufficient to support standing in a way that would allow facial challenges to such licensing schemes to proceed before the twin threats of self-censorship and undetectable content-based censorship could take hold. See id. at 759.

To be sure, one might argue (as the Commonwealth does) that merely being "subject to" a regulation is too subtle a harm to constitute a cognizable injury in fact. But such an argument flies in the teeth of City of Lakewood. What is more, it has consistently been rejected by federal appellate courts, which regularly have held that when a regulation is alleged to vest unbridled discretion in a government official to license a plaintiff's expressive activity and to pose a real and substantial threat of censorship, the plaintiff need only be subject to that regulation to establish a cognizable injury in fact. See, e.g.,

Miller v. City of Cincinnati, 622 F.3d 524, 531-32 (6th Cir. 2010); CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1274-75 (11th Cir. 2006); Southworth v. Bd. of Regents of the Univ. of Wis. Sys., 307 F.3d 566, 580-81 (7th Cir. 2002); MacDonald v. Safir, 206 F.3d 183, 188-89 (2d Cir. 2000); see also Get Outdoors II, LLC v. City of San Diego, 506 F.3d 886, 894-95 (9th Cir. 2007) (recognizing doctrine). It is being subject to a prior restraint on protected expression through requirements embodying standardless discretion, not being harmed by the unfavorable exercise of such discretion, that causes the initial injury.

This construct is consistent with statements in one of our own cases. In Osediacz v. City of Cranston, 414 F.3d 136 (1st Cir. 2005), a local resident challenged a municipal policy allegedly granting the mayor unfettered discretion to approve or reject the erection of holiday displays on a prime piece of city property. See id. at 137. We held that the plaintiff had suffered no injury in fact because she had failed to allege that she had any interest in ever erecting a holiday display on the site. See id. at 141-42. She was, therefore, not "subject to" the suspect policy in any meaningful sense. See id. at 143. At the same time, we noted that the standing inquiry in this context is "not very demanding"; and we made it pellucid that a plaintiff could satisfy the injury-in-fact requirement without actually applying for a permit. Id.

-10-

Of course, there are limits to the City of Lakewood standing doctrine. In delineating these boundaries, the Court declared that the challenged regulation "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." City of Lakewood, 486 U.S. at 759; accord MacDonald, 206 F.3d at 189. The Court reasoned that a facial challenge was appropriate because the challenged regulation was narrowly directed at an activity closely associated with expression and required annual relicensing, thereby enabling the decisionmaker to consider a speaker's viewpoint over time. See City of Lakewood, 486 U.S. at 759-60.

The case at hand falls comfortably within the compass of the City of Lakewood doctrine. The regulatory permitting scheme is alleged to confer unbridled discretion on the Director with respect to granting permits for billboards. Billboards, in turn, have a close nexus to expression. See, e.g., Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 501-02 (1981) (plurality opinion); id. at 524 (Brennan, J., concurring). After all, the very purpose of a billboard is to serve as a medium for conveying information and ideas. Moreover, it is evident that Van Wagner (which, at the time of the commencement of the action, already had applied for dozens of permits) is subject to the challenged scheme. See MacDonald, 206 F.3d at 189. And, finally, the regulations require the annual

renewal of permits.  This complex of circumstances makes out an injury in fact that is sufficient to ground Van Wagner's standing.

The Commonwealth presents a host of arguments in opposition to this conclusion.  We find none of them convincing.

The Commonwealth's principal argument is that the City of Lakewood doctrine applies only after a court finds some evidence that the twin threats of self-censorship and undetectable content-based censorship have materialized.  Those threats, the Commonwealth's argument runs, are not apparent here for two reasons.

First, the Commonwealth notes that the Massachusetts regulatory scheme is content-blind; that is, it does not require a permit-seeker to disclose the proposed content of its sign as part of the permit application process.  See 700 Mass. Code Regs. 3.06.  This circumstance, the Commonwealth says, makes any prospect of self-censorship or veiled content-based censorship wildly speculative.  This argument has a patina of plausibility, but upon closer examination that patina melts away like late-fallen snow on a balmy day in May.

The Commonwealth's argument stems from a misreading of City of Lakewood.  We do not understand the Court's discussion of the twin threats presented by unbridled discretion as a set of prerequisite conditions that must actually be tripped before the City of Lakewood doctrine can be invoked.  In particular, City of

Lakewood does not require a plaintiff to identify instances of self-censorship or content-based decisionmaking before a facial challenge may be mounted. The Court's decision imposes no such requirement, and no federal appellate court has espoused such a view. Rather, the federal cases all are in harmony with the Supreme Court's presumption that regulatory schemes exhibiting the features it identified pose these threats.[4] See, e.g., Miller, 622 F.3d at 531-32; Get Outdoors II, 506 F.3d at 894-95; CAMP Legal Defense Fund, 451 F.3d at 1274-75; Osediacz, 414 F.3d at 143; Southworth, 307 F.3d at 580-81; MacDonald, 206 F.3d at 188-89. This is a perfectly sensible approach. The case law teaches — and common sense verifies — that the threats are inherent in the standardless nature of such regulatory schemes.

In all events, the ordinance that was before the City of Lakewood Court — like the regulations at issue here — contained a content-blind permitting scheme. See City of Lakewood, 486 U.S. at 753-54 & n.2. The Court found that the scheme's periodic licensing requirement subjected it to facial attack even though the regulator could not view the content of the speech for which a license was sought. See id. at 759. Such standardless renewal provisions give

_____

[4] The Ninth Circuit's decision in Hunt v. City of L.A., 638 F.3d 703 (9th Cir. 2011) is not to the contrary. Although the court found that the plaintiffs lacked standing to challenge an ordinance because they had been granted permits, it recognized that the cognizable injury is the "threat of prior restraint." Id. at 718. Inasmuch as the challenged ordinance had been repealed, see id. at 706-07, the threat of prior restraint had dissipated.

rise to a well-founded fear that speakers may feel pressure to self-censor, "under no illusion regarding the effect of the[ir] 'licensed' speech on the[ir] ability to continue speaking in the future."  Id. at 759-60.  The Massachusetts regulatory scheme contains just such a provision.

Indeed, the Massachusetts scheme goes even further than the permitting scheme at issue in City of Lakewood.  The Director has broad authority to revoke permits previously issued. See 700 Mass. Code Regs. 3.03(2)(d), 3.09(2).  The regulations place no limit on what constitutes cause for revoking a permit.  See id. § 3.09(2).  Because the revocation of a permit prevents a billboard owner from engaging in further protected expression, those provisions pose the same potential threat as the provisions governing the granting and renewal of permits.  See New Eng. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 25 & n.8 (1st Cir. 2002).  Under this paradigm, a permit holder always must be wary of displaying a contentious message out of concern that the Director will retaliate by revoking its existing permits.[5]

----

[5] Van Wagner also alleged in its complaint that the license revocation provisions grant the Director unbridled discretion and threaten free expression.  The regulations grant the Director similarly broad authority to revoke licenses, and revocation requires a party to remove all its billboards within sixty days. See 700 Mass. Code Regs. 3.03(1)(b)-(c).  License revocation potentially threatens self-censorship to an even greater degree than permit revocation since the Director's broad discretion can mask retaliation targeting a party's entire business as opposed to a single billboard.

-14-

Second, the Commonwealth points out that between November 2009 and May 2013, Van Wagner had applied for over seventy permits without having a single application denied. As the Commonwealth sees it, this fact shows that the censorship risks are only theoretical. But that is far too optimistic a view. Van Wagner is a large, repeat player in the world of outdoor advertising. Consequently, it may plausibly fear incurring the Director's ire any time an existing or potential client seeks to display what might be deemed a controversial message. That threat exists regardless of how many applications Van Wagner has had approved in the past. After all, "[i]t is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." City of Lakewood, 486 U.S. at 757 (quoting Thornhill v. Alabama, 310 U.S. 88, 97 (1940)). Seen in this light, Van Wagner's record of success is irrelevant to determining whether it continues to suffer an injury.

The Commonwealth next contends that the Massachusetts regulatory scheme does not grant unbridled discretion to the Director. In its estimation, the illustrative list of factors to be used by the Director in making permitting decisions, see 700 Mass. Code Regs. 3.07(4), cabins his discretion. This compendium of considerations includes, among other things, "the health, safety and general welfare of the public; the scenic beauty of the area;

-15-

[and] the physical, environmental, cultural, historical or architectural characteristics of the location and the area."  Id.

The weight of the burden on the party seeking to maintain standing depends on "the manner and degree of evidence required at the . . . stage[] of the litigation" at which the issue arises. Lujan, 504 U.S. at 561.  Here, the Commonwealth purposed to test standing by an immediate motion to dismiss.  At this early stage, we are bound to accept the well-pleaded factual allegations in the complaint and draw all reasonable inferences therefrom in Van Wagner's favor.  See Fothergill, 566 F.3d at 251.  Thus, we are not tasked with determining whether the challenged regulatory scheme actually vests the Director with unbridled discretion.  Instead, we only must determine whether the complaint plausibly pleads the unbridled discretion theory.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

This is a low bar, and the complaint clears it with ease. It alleges that the challenged regulations "fail to provide the Director with objective standards to govern his permitting decisions, and effectively provide the Director with standardless discretion over whether and when to issue, renew and revoke licenses and permits."  Those allegations are far from implausible. A reasonable adjudicator plausibly could conclude that the regulatory scheme contains a paucity of objective factors, relying instead on a number of subjective factors that the Director "may"

-16-

consider.[6]   See 700 Mass. Code Regs. 3.07(4).   These factors plausibly could be read to be so general and amorphous as to provide easy cover for decisions that are actually content-based. See Desert Outdoor Adver., Inc. v. City of Moreno Valley, 103 F.3d 814, 818-19 (9th Cir. 1996) (holding unconstitutional ordinance that gave city officials unbridled discretion to determine whether a particular sign was harmful to community welfare or aesthetic quality).

Fighting on, the Commonwealth questions whether the City of Lakewood doctrine has any purchase in the context of commercial speech.  This argument has an ephemeral quality.  The Commonwealth notes an "open question"; refers to a suggestion to this effect in the district court's rescript, see Van Wagner, 953 F. Supp. 2d at 317; and cites footnotes in two Supreme Court cases, see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 571 n.13 (1980) (observing that "traditional prior restraint doctrine may not apply" to commercial speech); Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 771 n.24 (1976) (recognizing that "commercial speech may be more

---

[6] It is true that the regulatory scheme contains some objective criteria pertaining to the location and physical characteristics of a sign.  See, e.g., 700 Mass. Code Regs. 3.07(3), (5)-(8), (14)-(16).  But it also directs the denial or non-renewal of permits for signs that the Director deems to be incompatible with the surrounding area or visually destructive. See id. §§ 3.07(4), 3.08(3).  That determination is wholly within the Director's discretion and guided in substantial part by an open set of highly amorphous factors that he "may" consider.  See id.

durable than other kinds").  Its thesis seems to be that this case implicates strictly commercial speech and that, therefore, City of Lakewood is inapposite.

The factual premise of the Commonwealth's thesis is simply wrong.  It confuses a recognized category of First Amendment analysis — commercial speech simpliciter — with something quite different: those who have a commercial interest in protected expression.  See Metromedia, 453 U.S. at 504 n.11 (plurality opinion).  Although Metromedia was a fractured opinion, no fewer than seven Justices gave weight to the billboard companies' plaints regarding the impact of regulations on the noncommercial speech that sometimes appears on billboards.  See id. at 504 & n.11 (plurality opinion); id. at 524-26 (Brennan, J., concurring); id. at 543-44 (Stevens, J., dissenting).  The courts of appeals (including this court) have followed that lead, repeatedly analyzing billboard regulations with an eye to their effect on both the commercial and noncommercial messages that billboards may carry.  See, e.g., Interstate Outdoor Adver., L.P. v. Zoning Bd. of Twp. of Mount Laurel, 706 F.3d 527, 530, 534 (3d Cir. 2013); Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 802-03 (8th Cir. 2006); Ackerley Commc'ns of Mass., Inc. v. City of Somerville, 878 F.2d 513, 517-18 (1st Cir. 1989).

Here, Van Wagner has alleged that one use of billboards and other outdoor signs is to "convey non-commercial messages to

-18-

the public."[7] Crediting this well-pleaded fact (as we must at this stage of the litigation), billboard vendors like Van Wagner are better regarded as entities that have a commercial interest in protected expression. Thus, any regulation restricting Van Wagner's operations has the potential to affect the availability of channels of communication for noncommercial speech. Seen in this light, the Commonwealth's attempt to categorize this case as one implicating only commercial speech interests is struthious.

In a last-ditch effort to snatch victory from the jaws of defeat, the Commonwealth suggests that the holding in City of Lakewood turned, at least in part, on censorship risks unique to newspapers. We do not understand the Court to have been so narrowly focused; rather, the Court's holding is broadly applicable to many forms of expression.

The City of Lakewood dissenters questioned whether the Court's holding would apply to a section of the challenged ordinance requiring a permit to place a soda machine on city property. See 486 U.S. at 788-89 (White, J., dissenting). Instead of distinguishing the case on the obviously available ground that the plaintiff was a newspaper publisher, the majority stated only

---

[7] Although Van Wagner has not made a specific allegation anent the carriage of noncommercial messages on its billboards, it does allege that its signs are capable of carrying both commercial and noncommercial messages. At any rate, we think it reasonable to infer from the complaint that Van Wagner's billboards from time to time have carried and will carry noncommercial messages.

-19-

that its holding would not apply to "laws of general application that are not aimed at conduct commonly associated with expression." Id. at 760-61. Moreover, the majority drew its reasoning from a venerable line of cases addressing expressive activities other than newspaper publication. See id. at 755-56 & n.6. If more were needed — and we doubt that it is — the legion of cases applying City of Lakewood outside the newspaper industry leads inexorably to the conclusion that the limitation proposed by the Commonwealth is insupportable. See, e.g., CAMP Legal Defense Fund, 451 F.3d at 1274-75; Southworth, 307 F.3d at 580-81; MacDonald, 206 F.3d at 188-89.

To say more about standing would be supererogatory. The short of it is that Van Wagner has plausibly alleged that it is subject to a regulatory permitting scheme that chills protected expression by granting a state official unbridled discretion over the licensing of its expressive conduct. It follows — as night follows day — that Van Wagner has standing to mount a facial challenge to that regulatory permitting scheme.

## III. MISCELLANEOUS MATTERS

This leaves two loose ends, which we can tie up with some celerity. The first loose end involves Van Wagner's state-law claims. After the district court dismissed Van Wagner's First Amendment claim for lack of standing, it declined to exercise supplemental jurisdiction over these state-law claims. See 28

-20-

U.S.C. § 1367(c). It proceeded to dismiss them without prejudice. See Van Wagner, 953 F. Supp. 2d at 318-19.

Van Wagner asks us to reinstate its state-law claims. When a federal claim forms the linchpin for federal jurisdiction and the court dismisses that claim early in the game, it often will decline to exercise supplemental jurisdiction over related state-law claims. If, however, the dismissal of the linchpin federal claim proves to have been improvident, the state-law claims routinely are reinstated. See, e.g., Grajales v. P.R. Ports Auth., 682 F.3d 40, 50 (1st Cir. 2012); Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

We discern no reason why that salutary praxis should not be followed here. Consequently, we direct the district court, on remand, to reinstate Van Wagner's state-law claims.

The other loose end involves the Commonwealth's two additional defenses. It argues, in the alternative, that the district court lacks jurisdiction over Van Wagner's state-law claims under the Eleventh Amendment. See U.S. Const. amend. XI; see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 103-06 (1984). It also argues that the district court ought to abstain from deciding Van Wagner's First Amendment claim until the Massachusetts courts have had an opportunity to weigh in on the construction and operation of the regulatory permitting scheme.

-21-

See <u>R.R. Comm'n of Tex.</u> v. <u>Pullman Co.</u>, 312 U.S. 496, 501 (1941); <u>Barr</u> v. <u>Galvin</u>, 626 F.3d 99, 107-08 (1st Cir. 2010).

We take no view on either of these issues.  The court below did not address them, and we think that it would be inappropriate for us to do so without a better developed record and rulings from the district court.  <u>See</u> <u>Montalvo</u> v. <u>Gonzalez-Amparo</u>, 587 F.3d 43, 49 nn.5-6 (1st Cir. 2009).

## IV.  CONCLUSION

We need go no further.  For the reasons elucidated above, we <u>reverse</u> the order dismissing Van Wagner's First Amendment claim for lack of standing and <u>remand</u> for further proceedings consistent with this opinion.  We express no opinion on the merits of Van Wagner's First Amendment claim.

**<u>Reversed and remanded.</u>**