■ In the Matter of the CITY OF NEW YORK, Appellant, Relative to Acquiring Title to Real Property Bounded by Avenue L and Other Streets as a Site for School and Recreational Purposes: North Central Brooklyn High School in the Borough of Brooklyn. CHESTNUT PROPERTIES Co., Respondent.— In a condemnation proceeding, the condemnor, the City of New York, appeals, as limited by its brief, from so much of the second separate and partial final decree of the Supreme Court, Kings County, entered November 13, 1970 after a nonjury trial, as awarded $850,000 for damage parcel No. 11. Decree modified, on the law and the facts, by reducing the award for damages to parcel No. 11 to $700,000 plus interest. As so modified, decree affirmed insofar as appealed from, with costs to appellant. While disavowing complete reliance upon the method of valuation employed by the experts for the respective parties, it is apparent that the trial court relied heavily, if not entirely, upon the method used by the claimant's expert who projected an income stream from a nonexistent structure. In our opinion it was error to predicate the award upon the value of a nonexisting income stream from land as if it were improved by buildings which had not been constructed at the time title vested (*Arlen of Nanuet* v. *State of New York*, 26 N Y 2d 346, 350). Elaborate forecasts of income from nonexisting structures on land which needed large physical change to be usable for its purposes are not a proper measure of fair market value (*Matter of City of New York* [*Atlantic Improvement Corp.*], 28 N Y 2d 465, 470). We are in accord with the city's contention that where, as here, the planned development of land is interrupted by condemnation, the best criterion of market value is the price a purchaser would pay for the land in the state of exploitation to which it had progressed at the time

of vesting of title in the condemnor. In the present proceeding the experts for the respective parties agreed that there was no direct comparable market data available to indicate the value of the subject site. In this contingency, the recent actual sale price of the subject property was the best and most substantial evidence of market value. Additionally, the claimant is entitled to be recompensed for developmental enhancement of the property in preparing it for its contemplated use. Hopkins, Acting P. J., Latham, Christ and Brennan, JJ., concur; Benjamin, J., dissents and votes to affirm the decree insofar as appealed from, with the following memorandum: Unfortunately, this case was tried and decided by the trial court before the Court of Appeals held (in *Matter of City of New York* [*Atlantic Improvement Corp.*], 28 N Y 2d 465) that fair market value may not be measured by the capitalization of a projected stream of income from buildings that have not yet been constructed. Hence, much of the appraisers' proof of value related to that method of valuation. In light of the present state of the law on that point, I agree with the majority's conclusion that in a case like the present one it would be improper to consider such proof as the basis for valuation of the subject parcel, particularly since the use of comparable sales generally is the appropriate procedure. But in this case the capitalization of projected income was not *the* basis for valuation, but only one of the factors considered by the trial court, and there was ample support for its award in the other factors considered by it. Neither the claimant's nor the city's appraiser produced any relevant comparables in Kings County and neither, apparently, tried to find any in adjacent Queens County, despite the fact that land values in many parts of Queens are fairly comparable to the Kings County area here involved and both counties are replete with sales of apartment house lands. The city's appraisers based their valuation primarily on (a) the price the claimant agreed to pay for this property three years before the taking; (b) a 24% increment because of a 10% per year rise in land values during that period; and (c) an added sum for claimant's construction costs. On this basis they appraised the land at a total of $365,000 (including the increment for rising values), added $188,567 for construction costs, and reached a total valuation $553,567. But in deriving the per-square-foot value of the land from the $249,000 paid for the entire parcel, the land appraiser erroneously assumed that about ⅝ths of the parcel was zoned R6 (General Residence District) and that the remaining ⅛th was zoned M1-1 (Light Manufacturing District); in fact, ⅝ths was zoned M1-1 and only ⅛th was zoned R6. The importance of this error stems from the fact that he valued R6 land in this area at twice the value of M1-1 land. Utilizing the city appraiser's approach, but employing the correct breakdown of the parcel into R6 and M1-1 zones, the resultant valuation would be almost $7 per square foot for the R6 land, instead of the $4.50 the city's appraiser arrived at; and that $7 figure would be the value at the time the purchase of the property was contracted for, and before it was trended upward to take into account the rise in land values between the dates of purchase by claimant and taking by the city. With respect to the trending upward of the land value between the dates of purchase and condemnation, the city's appraiser made another error when he computed that period from the date the claimant took title, instead of from the date it contracted to buy the parcel; this was erroneous because the purchase price was fixed on the date of contract — eight months before the closing. As the city appraiser estimated the rise in land values at 10% per year, and the elapsed time between the dates of claimant's contract to buy and the date of taking by the city was a bit over three years, the increment in land value

attributable to that factor would be 30% instead of the 24% figure used by the city appraiser. Adding that 30% increment to the $7 per-square-foot valuation arrived at for R6 land by application of the city appraiser's method to the correct percentages of the subject parcel which were R6 and M1-1, respectively, the resultant value of the R6 land at the date of vesting was about $9 per square foot. As all of the property had by then been rezoned to R6, the land value of the entire parcel (including plottage and corner value) was $9 times the area of 60,869 square feet, or $547,821. When we add to that land value the site costs of $84,583 and construction costs of $244,275 testified to by claimant's witnesses, the total value at time of vesting would appear to be $876,679 — a figure almost $27,000 *higher* than the $850,000 awarded by the trial court. It is clear, then, that there is in this record ample support for the award, apart from the impermissible forecast by claimant of a stream of income from the commenced, but not yet erected, apartment house. One final point deserves mention. When bought by the claimant, the subject parcel was undesirable, low grade commercial property — as the trial court described it, merely " an abandoned factory site ". After buying it, claimant succeeded in having it upgraded, at considerable expense of time, money and skill, to a highly desirable apartment house site in a good residential area with excellent transportation facilities and nearby shopping. In accomplishing this result, claimant (an experienced builder) procured the elimination of a mapped street from the City Map, obtained a rezoning of the property, obtained a variance from certain building restrictions (which permitted about a 30% increase in the permissible rental area), obtained approval from the New York City Transit Authority for removal of a railroad embankment from the land, laid a sewer and paved two streets. The resultant increase in the value of the land obviously was very substantial; indeed, the variance permitting a 30% increase in the rental area may alone have enhanced its value far beyond that of an ordinary R6 parcel in that area. Yet the majority has placed little, if any, value on this successful entrepreneurial achievement. In no event, however, can the original cost of this property, as enhanced by normal increments and building costs, be considered a sufficient basis for reduction of the award. The property taken, after its character had been changed by rezoning and increase of usable area, was totally different from the property originally acquired. If we are not affirming, we must at least remit the proceeding for a new hearing upon the appropriate damage theory, to wit, comparable values of apartment house sites, of which there are countless numbers in Kings County as well as adjacent Queens County. In light of all the foregoing, I believe the award made by the trial court was, if anything, on the low side. As the claimant is satisfied with it, and only the city appeals, I vote to affirm.