OPINION OF THE COURT
Irad S. Ingraham, J.
Petitioner brings this proceeding pursuant to article 7 of the *827 Real Property Tax Law challenging its 1993-1994 assessment of $125,300. Hearing was held before this court on September 26, 1994, and the following findings of fact are derived from that hearing.
FINDINGS OF FACT
The subject property is identified as parcel No. 300.07-4-49.02 on the Otsego County tax map. It consists of a triangular shaped parcel of some 1.36 acres of land. It is located at 36 Rose Avenue in the City of Oneonta, New York. It has 155 feet of frontage on Rose Avenue. The property is used for both residential and commercial purposes, with primary use consisting of a tennis club. The structure on the property is a one-story metal building which houses two indoor tennis courts, a locker room, lounge and four-room apartment. The metal building covers some 14,000 square feet and the apartment an additional 1,400 square feet. The original tennis court structure was constructed in 1978, and the apartment constructed as an addition to the original structure in 1989. The apartment consists of two bedrooms, a living room, dining room, kitchenette and IV2 baths. The original cost figures for the structures are unclear. Petitioner lists a total cost of $157,858 for depreciation purposes in its income tax return. Paul Vandersohn, president of the Tennis Club, testifies to an investment of some $25,000 for the apartment which he and his brother constructed. The property has utilities, sewer and water. The property received tax exemptions during the period 1978-1988 to encourage development. It was zoned commercial during that time and was and is used for tennis and tennis lessons by patrons of the Club. It is also used as a one-family apartment. Petitioner presents income tax returns showing that the business operated at a loss of $9,735 in 1991. Zoning of the property has now changed from commercial to residential. The equalization rate for the year in question is 36.92%.
Petitioner presents certified real estate appraiser John Terwilliger who uses an “assessment comparison” approach to this appraisal which basically cites comparable storage buildings in the area and compares their assessments with petitioner’s on a square foot basis. He testifies to an appraised value of $150,000, applies the equalization rate of 36.92%, for an assessed value of $60,000 which he then reduces to $48,000 based upon a deteriorated neighborhood. His written appraisal *828 applies a square foot average factor of $4.74 which yields a total assessed value of $73,088. Post appraisal, he submits comparable sale of a brick storage building for $270,000. Respondent submits the appraisal of certified real estate appraiser Calvert Bailey, who utilizes the "cost approach.” He also selects a square foot factor derived from Marshall & Swift Residential Cost Service Tables and Commercial Cost Service Tables since he did not know the original cost of construction. He determines a valuation of $297,000 after depreciation which then distills to an equalized assessment of $110,000.
CONCLUSIONS OF LAW
Generally, one of three methods of valuation of property are employed: (1) the cost approach; (2) the income capitalization approach; (3) the market approach. However, in determining value of a property, all relevant factors must be taken into consideration. Although appropriate in other situations, one method of assessment must not be rigidly applied to all scenarios. Rather them adopting such an inelastic approach to valuation, the court may allow such method of valuation as most nearly takes into account all the pertinent factors and considerations at hand. If one of the conventional theories of valuation is applicable to a particular situation, then that method should be employed. "Pragmatism, however, requires adjustment when the economic realities prevent placing the properties in neat logical valuation boxes”. (G.R.F., Inc. v Board of Assessors, 41 NY2d 512, 515 [1977].) Furthermore, the Court of Appeals has held, "The command of section 306 of the Real Property Tax Law that all property be assessed at full value does not pronounce an inelastic approach to valuation. Nor does the legislative directive specify a particular method for establishing value. And courts, being under no compunction to do so, have not confined assessors to any one course. To ensure that the existence of varied and multifaceted patterns of land use and ownership does not frustrate the design that each contribute equitably to the public fisc, courts have upheld any fair and nondiscriminatory method that appears most likely to achieve that end”. (Matter of Merrick Holding Corp. v Board of Assessors, 45 NY2d 538, 541 [1978].)
This is particularly true when the property to be valued is unique, as is the property in the present matter. Because of its unique status as a privately owned tennis club with residen *829 tial quarters attached, there are no other comparable properties available which parallel this property. Furthermore, because there has been negative income generated by the business, any income capitalization approach would yield inappropriate results. Petitioner states that his method was used because of the unique use of the property, the building’s location within an area zoned as residential, and the alleged poor condition of the property. Petitioner argues that because of these factors, the other regularly accepted methods of valuation would yield inaccurate results.
Although the method of valuation used by petitioner’s appraiser is not one of the commonly utilized methods, it is a legitimate basis for an initial objection to assessment. Petitioner claims that his assessment is extremely disparate from commonly situated properties. Diversity of assessment is a basis for objection. Generally, one challenging an assessment may present disparate assessments upon relatively comparable properties; whether such properties may indeed be designated as "comparables” is a question of fact for the court to determine. (Matter of General Elec. Co. v Town of Salina, 69 NY2d 730 [1986]; Matter of Phelps Dodge Indus. v Kondzielaski, 131 AD2d 675 [2d Dept 1987].)
Generally, in an assessment review, the court is granted great discretion in evaluating the appraisals presented by each party. The court need not be held to one of the figures presented; rather, "[i]n the process of the review * * * the courts are authorized and may be expected to make separate factual determinations as to the value properly to be assigned to the land and [to any buildings]. These are factual findings to be made on the basis of the proof in the record. Either value may be above or below or the same as the value fixed by the board of assessors; the only restriction on the judicial determination is that the total assessment [ultimately fixed] cannot exceed the total assessment under review.” (Matter of Shubert Org. v Tax Commn., 60 NY2d 93, 97 [1983].) In fixing the valuation the court rejects the Bailey appraisal on the Tennis Club as far in excess of any cost figures submitted and in excess of the value of comparable commercial buildings in the area. However, the value of the living quarters is underestimated by the Terwilliger appraisal in lumping the same with comparable commercial buildings. This portion of the building constitutes a residence and must be so assessed at a greater value than the tennis area. The court also rejects the cost of paving and deck as not supported by any evidence *830 submitted. The court also rejects any discount for deterioration in the neighborhood as unsubstantiated. While a tennis club might be considered more valuable than storage buildings, the court takes judicial notice of declining real estate values in the area for the subject years in placing greater emphasis on the Terwilliger appraisal.
Accordingly, taking into consideration all the relevant factors, including the assessments placed upon the comparable properties presented, the age and condition of the building, the unique nature of the business, and the nature of the zoning of the area of the building in question, the court concludes as follows:
Land 1.38 acres Tennis Club Apartment
Valuation
$27,000
$41,968
Assessed
Value
$10,000 (Bailey) $66,360 (Terwilliger) $15,500 (Bailey) $91,860
TOTAL