■ BRIARCLIFF ASSOCIATES, INC., et al., Respondents-Appellants, v TOWN OF CORTLANDT, Appellant-Respondent. [708 NYS2d 421] —In an action, inter alia, for a judgment declaring that the defendant effected an unconstitutional taking of the plaintiffs' property, and to recover damages therefor, the defendant appeals, as limited by its brief, from (1) stated portions of a decision of the Supreme Court, Westchester County (Nicolai, J.), dated August 14, 1997, (2) so much of an order of the same court, entered August 24, 1998, as, upon granting reargument of so much of the decision dated August 14, 1997, as failed to award the plaintiffs damages based on the highest and best use of the subject property, awarded the plaintiffs the principal sum of $9,054,331, (3) stated portions of a judgment of the same court, entered November 20, 1998, which, after a nonjury trial, inter alia, are in favor of the plaintiffs and against it in the principal sum of $9,054,331, and (4) stated portions of an amended judgment of the same court, entered December 15, 1998, which, inter alia, are in favor of the plaintiffs and against it in the principal sum of $9,054,331 and declared, inter alia,

that there had been an unconstitutional taking of the plaintiffs' property. The plaintiffs (1) appeal from so much of an order of the same court, entered August 24, 1998, as, upon granting the defendant's motion to reargue so much of the decision dated August 14, 1997, as determined that the plaintiffs were entitled to legal fees, denied their application for legal fees, and (2) cross-appeal from (a) stated portions of the judgment entered November 20, 1998, and (b) so much of the amended judgment as failed to award them legal fees, and limited interest on the damages award to six percent.

Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (*see, Schicchi v Green Constr. Corp.,* 100 AD2d 509); and it is further,

Ordered that the appeals from the orders are dismissed; and it is further,

Ordered that the appeal and cross appeal from the judgment are dismissed, as the judgment was superseded by the amended judgment; and it is further,

Ordered that the amended judgment is modified, on the facts and the law, by deleting the first, second, third, and fourth decretal paragraphs and substituting therefor a decretal paragraph declaring that the enactment of Resolutions Nos. 99-88 and 100-88 amending Chapter 88 of the Town of Cortlandt Code and Resolution No. 107-89 amending Chapter 78 of the Town of Cortlandt Code was not an unconstitutional taking of the plaintiffs' property without just compensation; as so modified, the amended judgment is affirmed; and it is further,

Ordered that the cross appeal from the amended judgment is dismissed in light of our determination of the appeal from the amended judgment; and it is further,

Ordered that the defendant is awarded one bill of costs.

The appeals from the intermediate orders dated August 24, 1998, must be dismissed because the right of direct appeal therefrom terminated with entry of the amended judgment in the action (*see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on the appeals from the orders are brought up for review and have been considered on the appeal from the amended judgment (*see,* CPLR 5501 [a] [1]).

In 1985, the plaintiff, Briarcliff Associates, Inc., purchased a 128-acre parcel in the Town of Cortlandt (hereinafter the Town), Westchester County, for $400,000. At the time, the parcel was vacant except for a small, operating emery mine that produced approximately 2,000 tons of materials a year (*see, Matter of Briarcliff Assocs. v Town of Cortlandt,* 144 AD2d

457). The plaintiff intended to convert the parcel into a crushed-stone quarry that it projected would produce 500,000 tons a year, four years after the purchase. However, in 1988, the Town amended its zoning code by rezoning the parcel residential and prohibiting mining on the site (*see,* Resolutions Nos. 99-88, 100-88, amending Chapter 88 of Town of Cortlandt Code). Moreover, in another amendment to its zoning code, the Town, *inter alia,* prohibited heavy trucking on the single Town road leading to the site (*see,* Resolution No. 107-89, amending Chapter 78 of the Town of Cortlandt Code). The plaintiffs commenced this action, *inter alia,* for a judgment declaring that an unconstitutional regulatory taking had occurred as a result of the rezoning. Damages were sought as a result of this purported taking. After a lengthy trial, the Supreme Court concluded that a regulatory taking had, in fact, occurred. In an amended judgment entered December 15, 1998, *inter alia,* the plaintiffs were awarded damages of $9,054,331. Interest of $5,862,679.44 was also awarded. We conclude that no regulatory taking occurred herein and accordingly modify the amended judgment.

As the Court of Appeals has stated, "[a] landowner who claims that land regulation has effected a taking of his property bears the *heavy burden* of overcoming the presumption of constitutionality that attaches to the regulation and proving every element of his claim *beyond a reasonable doubt*" (*de St. Aubin v Flacke,* 68 NY2d 66, 76 [emphasis supplied]; *see also, Matter of Wedinger v Goldberger,* 71 NY2d 428, 439-440, *cert denied* 488 US 850).

In this context, the Court of Appeals has observed that, "[o]nly when the evidence shows that the economic value, or all but a bare residue of the value, of the parcel has been destroyed has a 'taking' been established" (*Spears v Berle,* 48 NY2d 254, 263). Moreover, "it is clear that the 'mere diminution in the value of property, however serious, is insufficient to demonstrate a taking' * * * Furthermore * * * the fact that a regulation 'deprives the property of its most beneficial use does not render it unconstitutional' (*Goldblatt v Hempstead,* 369 US 590, 592 * * *) * * * Thus, a taking may be found only if an onerous burden forces property owners 'alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole' (*Armstrong v United States,* 364 US 40, 49)" (*Matter of Gazza v New York State Dept. of Envtl. Conservation,* 89 NY2d 603, 618-619, *cert denied* 522 US 813; *see also, Bonnie Briar Syndicate v Town of Mamaroneck,* 94 NY2d 96, 105; *Seawall Assocs. v City of New York,* 74 NY2d 92, 107; *Manocherian v Lenox Hill Hosp.,* 84 NY2d 385).

Applying this established jurisprudence, this Court has had occasion to note that "[i]t is well settled that a property owner who challenges land regulation as a taking has a heavy burden of proof. He must demonstrate, by 'dollars and cents evidence' * * * that under no permissible use would the parcel as a whole be capable of producing a reasonable return" (*Matter of Smith v Williams,* 166 AD2d 536, 537, quoting *Spears v Berle,* 48 NY2d 254, 263, *supra*).

In the instant case, the plaintiffs failed to meet their burden for several reasons. First, at the time of their purchase of the parcel, the plaintiffs could have continued to operate the emery mine on the site as a legal nonconforming use (*see, People v Miller,* 304 NY 105, 107-108; *Mary Chess, Inc. v City of Glen Cove,* 18 NY2d 205, 210; *cf., Matter of Steiner Fellowship Found. v De Luccia,* 90 NY2d 453). The fact that the plaintiffs may not be able to operate a crushed-stone quarry generating 250 times the annual tonnage of the emery mine does not mean that they have been deprived of the reasonable return on their $400,000 investment. As the United States Supreme Court has noted, "the submission that [a property owner] may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable" (*Penn Cent. Transp. Co. v City of New York,* 438 US 104, 130). In other words, notwithstanding the plaintiffs' "unilateral expectation", the rezoning at issue cannot be construed as depriving the property of all economic value (*Ruckelshaus v Monsanto Co.,* 467 US 986, 1005; *see also, Matter of Gazza v New York State Dept. of Envtl. Conservation,* 217 AD2d 202, 213, *affd* 89 NY2d 603, *supra; Park Ave. Tower Assocs. v City of New York,* 746 F2d 135, 138-139 [2d Cir 1984]). Under such circumstances, it was error for the Supreme Court to conclude that a taking had occurred (*see, Lucas v South Carolina Coastal Council,* 505 US 1003, 1019; *see also, City of Monterey v Del Monte Dunes,* 526 US 687; *Dolan v City of Tigard,* 512 US 374; *Nollan v California Coastal Commn.,* 483 US 825).

In any event, the plaintiffs failed to meet their heavy burden of proving that any residential development on this 128-acre parcel had been precluded by the Town's zoning amendments. Initially, we observe that, given the sharply conflicting evidence presented at trial, the plaintiffs failed to establish, beyond a reasonable doubt, that they would be unable to install any residential septic system on the 128-acre parcel. In this regard, we find the testimony of the defendant's experts persuasive as to the availabilty of various septic sites on the

parcel, and note that there has never been any attempt on the part of the plaintiffs to develop the site residentially (see, Matter of Parkview Assocs. v City of New York, 71 NY2d 274, 283).

With respect to the zoning amendment regulating the size of trucks on selected Town roads (see, Town of Cortlandt Code § 78-71), we observe that the amendment prohibits trucks in excess of five tons or longer than 35 feet from traveling on eight Town roads, including the road leading to the plaintiffs' property. The plaintiffs assert that, by this amendment, they are categorically excluded from utilizing the relevant Town access road to move construction equipment onto the site.

The plaintiffs' argument is not supported by the record. The zoning amendment expressly permits "the delivery or pickup of merchandise or other property along the highways from which * * * vehicles [in excess of five tons] are otherwise excluded" (Town of Cortlandt Code § 78-72). The evidence at trial conclusively established that the Town has consistently enforced the zoning amendment so as to permit access of construction vehicles for residential development upon the Town roads in question. In this regard, the Town established that at least one residential subdivision was constructed subsequent to the enactment of the amendment utlizing the very Town road that provides access to the subject parcel. Moreover, the Town established that a second residential subdivision was constructed using a Town road subject to the same restrictions that the plaintiffs claim precludes any residential development of their parcel. Under such circumstances, the plaintiffs have failed to establish that the zoning amendment constituted an unconstitutional taking of the parcel by precluding access of construction equipment for residential development (see, Tilles Inv. Co. v Town of Huntington, 74 NY2d 885, 888; cf., Matter of Grimpel Assocs. v Cohalan, 41 NY2d 431, 432; see also, MacDonald v Safir, 206 F3d 183 [2d Cir]).

Furthermore, under the circumstances of this case, the court relied on an entirely speculative method of valuing the parcel. It is well settled that a recent, arm's-length sale of a parcel is persuasive evidence of its value (see, Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356; see also, Matter of Gazza v New York State Dept. of Envtl. Conservation, supra, at 213). We conclude that the $400,000 purchase price of the parcel in 1985 was compelling evidence of the value of the parcel that should not have been ignored by the Supreme Court. Significantly, we note that this conclusion is supported by the testimony of the plaintiffs' own real estate appraiser who

expressed the opinion that the parcel would be worth $575,000 if sold as an estate or minor subdivision.

In any event, we conclude that the Supreme Court erred in ascribing a value of $9,054,331, to the parcel based on its assumption that, at the time of the purported taking, it was a fully-operational crushed-stone mine. In reality, the property had not received any permits from the New York State Department of Environmental Conservation to mine any crushed stone and it was entirely speculative to assume that any permit would be forthcoming at the annual production levels hypothesized by the plaintiffs' experts.

In addition, in calculating the income stream that the vacant parcel would produce, the court factored into its model various other assumptions put forward by the plaintiffs' experts which were unsupported by the record. Specifically, the court's assumptions with respect to the selling price of the crushed stone, the cost of transporting the stone, and the regional market for the stone, were entirely speculative in that they assumed optimal performance of a fully-functioning mine and in no way reflect what a willing buyer would pay to purchase this vacant parcel. "Elaborate forecasts of income from non-existent structures on land which needed large physical change to be usable for the purpose is not a proper measure of fair market value" (*Matter of City of New York [Atlantic Improvement Corp.],* 28 NY2d 465, 470).

Accordingly, even assuming that a regulatory taking had occurred, the court's award of damages would be rejected as conjectural and not in conformance with established condemnation principles (*see, Matter of City of New York [Broadway Cary Corp.],* 34 NY2d 535, 536; *Arlen of Nanuet v State of New York,* 26 NY2d 346; *Sparkill Realty Corp. v State of New York,* 268 NY 192, 196-197; *Matter of Pickerell v Town of Huntington,* 272 AD2d 331; *Matter of Consolidated Edison Co. [1521 Sq.],* 193 AD2d 603; *Matter of Consolidated Edison Co. v Neptune Assocs.,* 190 AD2d 669, 670; *Matter of City of New York [Chestnut Props. Co.],* 39 AD2d 573, 574). Bracken, J. P., Sullivan, Altman and McGinity, JJ., concur.