■ In the Matter of the SUN PLAZA ENTERPRISES, CORP., Respondent-Appellant, v TAX COMMISSION OF CITY OF NEW YORK et al., Appellants-Respondents. [759 NYS2d 127] —In a

consolidated tax certiorari proceeding pursuant to Real Property Tax Law article 7 to review real property tax assessments for the tax years 1995-1996, 1996-1997, 1997-1998, and 1998-1999, the Tax Commission of the City of New York and Commissioner of Finance of the City of New York appeal from an order and judgment (one paper) of the Supreme Court, Kings County (Scholnick, J.), dated September 20, 2001, which, after a nonjury trial, reduced the real property assessments on the subject property for each of the tax years in question, and the petitioner cross-appeals, as limited by its brief, from so much of the same order and judgment as failed to direct larger reductions.

Ordered that the order and judgment is reversed, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for recalculation of the assessments on the subject property in accordance herewith.

The subject property is a rectangularly-shaped lot, measuring approximately 265 feet wide by 650 feet long, totaling 172,250 square feet, in the Mill Basin section of Brooklyn. The front of the property lies on Avenue U and the rear is on the waterfront of the Mill Basin Inlet. The property was used as an oil depot and terminal by its former owner, Sun Company, Inc. In August 1992 the petitioner, Sun Plaza Enterprises, Inc., contracted to purchase the property for use as an oil terminal, with the option to develop it for retail use, provided exemptions from certain zoning restrictions were obtained. The property is zoned M3-1 for manufacturing; however, the immediate area is presently primarily retail in nature. The petitioner exercised the option and closed on the property in August 1994. The existing structures were demolished and the property is presently vacant.

After the petitioner entered into the agreement for purchase of the property but prior to the closing, the City of New York enacted waterfront regulations. The regulations require, inter alia, the petitioner to erect a 60-foot wide visual corridor down the center of its property and a pedestrian walkway or promenade near the waterfront. These regulations not only dramatically affect the configuration of any structure that could be built on the petitioner's property, but they prohibit construction on approximately 30% of it. Since purchasing the property, the petitioner has been unsuccessful in developing it in part due to the effect of the waterfront regulations.

The petitioner commenced these proceedings challenging the tax assessments for the years 1995-1996 through 1998-1999. At trial, the petitioner's expert, valuing the property as "vacant

contaminated land with a stigma of the waterfront regulations," presented his appraisal of the property. Using comparable sales of sites zoned for manufacturing, the petitioner's appraiser demonstrated an overvaluation. The City's expert appraiser used comparable sales of sites zoned for commercial use and demonstrated no overvaluation. The Supreme Court rejected the petitioner's appraisal on the ground that it did not use a highest and best use approach in valuing the property for its development potential as commercial property. The Supreme Court accepted the appraisal of the City's expert, but only after making various adjustments. The Supreme Court adjusted the City's figures downward by 40% to account for the impact of the waterfront regulations, finding that the 20% adjustment used by the City was insufficient. Further, the Supreme Court made additional adjustments for zoning and size, finding the adjustments made by the City also inadequate.

There is no merit to the City's contention that the petitioner failed to meet its initial burden of proof in rebutting the presumptive validity of the assessments once the Supreme Court rejected the petitioner's appraisal. The documentary and testimonial evidence presented by the petitioner was adequate to sustain its burden of overcoming the presumption of validity attaching to the tax assessment (*see Matter of FMC Corp. v Unmack,* 92 NY2d 179, 187-188 [1998]; *Frontier Park v Assessor of Town of Babylon,* 293 AD2d 608 [2002]; *Matter of Jay Dee Tomfor Transp. v Board of Assessors,* 288 AD2d 475 [2001]). The existence of the waterfront regulations and their disputed impact on the commercial development of the property clearly demonstrated that a "valid and credible dispute" existed regarding valuation (*Matter of FMC Corp. v Unmack, supra* at 188). Thus, the petitioner met its initial burden in rebutting the presumption of validity attached to the City's tax assessment. Once rebutted, the presumption disappeared. That the Supreme Court ultimately rejected the petitioner's appraisal for its failure to use a highest and best use analysis is irrelevant to the threshold issue of whether the petitioner met its initial burden (*see Frontier Park v Assessor of Town of Babylon, supra*).

With respect to the adjustments made by the Supreme Court, we note that "the ultimate purpose of valuation, whether in eminent domain or tax certiorari proceedings, is to arrive at a fair and realistic value of the property involved" (*Matter of P.G.C. Assoc. v Assessors of Town of Riverhead,* 270 AD2d 272, 273 [2000]; *see Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon,* 88 NY2d 724, 729 [1996]; *Matter*

*of Great Atl. & Pac. Tea Co. v Kiernan,* 42 NY2d 236, 242 [1977]; *Matter of Jay Dee Tomfor Transp. v Board of Assessors, supra*). Further, "in an assessment review, the court is granted great discretion in evaluating the appraisals presented by each party" (*Oneonta Tennis Club v City of Oneonta Assessor,* 163 Misc 2d 826, 829 [1994]). The Supreme Court providently exercised its discretion in increasing the downward adjustment from 20% to 40% to account for the onerous impact of the waterfront regulations on the petitioner's property. It was undisputed that the waterfront regulations affected the commercial development of the petitioner's property in a negative way. The trial evidence disclosed that the effect of the regulations would require a complete division of the property into two separate parcels due to the requirement of a 60-foot wide visual corridor and would preclude development on a substantial part of the land. Moreover, it is the best or primary part of the parcel—its center—that is affected, and the most logical and optimal use of the land is taken away. The waterfront regulations not only encumbered the best part of the property, but they affected negatively and dramatically the configuration of any structure to be constructed on the property. For these reasons, the increase of the downward adjustment from 20% to 40% to account for the negative impact of the waterfront regulations was appropriate.

In making the various adjustments for zoning, the Supreme Court's rationale was that the kind of retail stores built (i.e., Costco, Pep Boys Automotive Stores, Home Depot, and P.C. Richards) on the so-called "comparables" (Sale Nos. 2, 3, 4, 5, and 6) would not be permitted on the subject property. The Supreme Court, in making its adjustment for zoning, factored in for a second time the effect of the waterfront regulations. This resulted in a reduction for the same item twice. This was error. Furthermore, any reduction for zoning was not justified in this case. The record showed that while the zoning regulations placed a 10,000 square-foot limitation on the type of retail store that could be built, the real impediment here was the store's configuration, a direct result of the requirements imposed by the waterfront regulations. The zoning restriction itself could easily be overcome, as evidenced by the Kings Plaza Shopping Center, which successfully applied for a variance, and the Home Depot store, which was also built on land zoned M3-1. The restriction imposed by the M3-1 zoning designation did not pose a serious problem. Indeed the petitioner waived it as a condition precedent to closing, and, the petitioner never even applied for a variance from its limitations, focusing instead on obtaining a variance from the waterfront

regulations. Accordingly, the Supreme Court's adjustments for zoning were not supported by the record.

The Supreme Court's additional adjustments for the size of the parcels were also made in error. Both experts testified that the dollar value per square foot decreased with a larger parcel, and an adjustment for size was necessitated. Three of the sites relied upon by the City's experts (Sale Nos. 4, 6, and 7) were approximately 18,000 square feet, which was only approximately one tenth of the acreage of the subject property, and another (Sale No. 5) was only approximately one-third the size of the subject property. The City's expert made a downward adjustment of 25% (for the 18,000 square-feet parcels), which the Supreme Court increased to 45%. The remaining parcel, which the City's expert adjusted 10% downward, was increased to 25% by the court. The adjustments made by the City's expert were adequate and necessitated no further adjustment.

Contrary to the petitioner's contention on its cross appeal, the Supreme Court properly rejected its expert's appraisal for his failure to use a highest and best use analysis. This Court has previously indicated that "zoning and reasonable developmental potential of unimproved land may properly be taken into account in determining the market value of property on taxable status dates" (*Matter of Weingarten v Town of Ossining,* 85 AD2d 697, 698 [1981]; *see Matter of Stonegate Family Holdings v Board of Assessors of Town of Long Lake,* 222 AD2d 997 [1995]; *City of Rochester v Assessor of Town of Conesus,* 136 AD2d 881 [1988]). Further, the Supreme Court correctly valued the property for its development potential as commercial/retail property. Notably, the petitioner's expert conceded that the highest and best use of the property was not manufacturing, and that commercial development of the property was desirable. The area itself, although zoned for manufacturing, is presently primarily retail in nature. That the impact of the waterfront regulations have undoubtedly made the commercial development of the property financially more difficult and that the petitioner thus far has been unsuccessful in its efforts does not lead to the conclusion that any and all commercial development is not feasible. The Supreme Court correctly found that the petitioner failed to meet its burden in this regard. The Supreme Court properly applied a higher standard of proof to the petitioner's "taking claim" (*de St. Aubin v Flacke,* 68 NY2d 66, 76 [1986]; *see Briarcliff Assoc. v Town of Cortlandt,* 272 AD2d 488, 490 [2000]), and properly included in the total taxable square footage that portion of the property which cannot be developed as a result of the water-

front regulations, since the Supreme Court already adjusted for this impact.

Because the Supreme Court was correct in its adjustment for the waterfront regulations but erred in applying adjustments for size of some comparables and for zoning, we remit the matter to the Supreme Court, Kings County, for recalculation of the assessed valuations for the years in question. Santucci, J.P., Krausman, Crane and Mastro, JJ., concur.