■ KENT ACRES DEVELOPMENT CO., LTD., et al., Respondents-Appellants, v CITY OF NEW YORK et al., Respondents, and TOWN BOARD OF TOWN OF KENT et al., Appellants-Respondents. (Matter No. 1.) In the Matter of KENT ACRES DEVELOPMENT CO., LTD., et al., Appellants, v CITY OF NEW YORK et al., Respondents. (Matter No. 2.) [841 NYS2d 108]—

In a hybrid action, inter alia, for a judgment declaring that 15 RCNY 18-82 (g) (1) is invalid, to recover damages pursuant to Public Health Law § 1105 (1), and to recover damages for the taking of real property without just compensation, and proceeding pursuant to CPLR article 78, among other things, to review a determination of the New York City Department of Environmental Protection dated June 20, 1996, in effect, denying the application of Lexington Realty Development Corp. for approval of a wastewater treatment plant and, in effect, to review a determination of the Town Board of the Town of Kent dated January 20, 1999, in effect, denying the application of Kent Acres Development Co., Ltd., and Lexington Realty Development Corp. for the consent of the Town Board of the Town of Kent for their wastewater treatment plant to participate in the New York City Department of Environmental Protection's "Phosphorous Offset Pilot Program" (matter No. 1) which was consolidated with a hybrid proceeding pursuant to CPLR article 78 to review a determination of the New York City Department of Environmental Protection dated December 11, 2002, denying the request of Kent Acres Development Co., Ltd., and Lexington Realty Development Corp. for confirmation that the wastewater treatment plant constitutes a "noncomplying regulated activity," and action, inter alia, for a judgment declaring, among other things, that the wastewater treatment plant constitutes a noncomplying regulated activity (matter No. 2), (1) the Town Board of the Town of Kent and the Planning Board of the Town of Kent appeal, as limited by their brief, from so much of an order and judgment (one paper) of the Supreme Court, Putnam County (O'Rourke, J.), dated October 14, 2005, as, in effect, annulled the determination of the Town Board of the Town of Kent dated January 20, 1999, and directed the Town Board of the Town of Kent to consent to the participation of the wastewater treatment plant in the Phosphorous Offset Pilot

Program, and (2) Kent Acres Development Co., Ltd., and Lexington Realty Development Corp. separately cross-appeal, as limited by their respective briefs, from so much of the same order and judgment as, in effect, denied that branch of their motion which was for summary judgment declaring that 15 RCNY 18-82 (g) (1) is invalid, confirmed the determinations of the New York City Department of Environmental Protection, and granted those branches of the motion of the City of New York, New York City Department of Environmental Protection, and Christopher Ward, Commissioner of the New York City Department of Environmental Protection, which were for summary judgment dismissing the causes of action to recover damages pursuant to Public Health Law § 1105 (1) and for the taking of real property without just compensation.

Ordered that the order and judgment is modified, on the law, by adding thereto provisions declaring that 15 RCNY 18-82 (g) (1) is valid and that the wastewater treatment plant does not constitute a noncomplying regulated activity; as so modified, the order and judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

In the early 1980's, the plaintiff-petitioner Kent Acres Development Co., Ltd. (hereinafter Kent Acres), decided to construct 318 (later reduced to 303) condominiums on certain land in the Town of Kent, which is located in the defendant County of Putnam. In order to do so, Kent Acres was required to build a wastewater treatment plant (hereinafter the Plant) to treat the sewage produced by the planned development (hereinafter the Project). When constructed and operated, the Plant would discharge phosphorous which would make its way into one of the reservoirs that is part of the water supply system for the defendant City of New York, providing City residents with potable water.

Kent Acres needed certain approvals in order to build the Project and construct and operate the Plant. One approval was required from the New York State Department of Environmental Conservation (hereinafter the DEC), which, at the time, reviewed and approved the construction plans for wastewater treatment plants (see 6 NYCRR former part 652). Kent Acres submitted the construction plans for the Plant to the County's Department of Health (hereinafter the County DOH), which reviewed the plans on behalf of the DEC. As part of its review, the County DOH spoke with an engineer from the City's Department of Environmental Protection (hereinafter the DEP), which, pursuant to the then-existing Watershed Regulations, had the authority to review and approve the construction plans

for "any new sewage disposal system" that was going to be built in the City's watersheds (10 NYCRR former 128.1 [c] [7]). When the engineer advised the County DOH that the Plant's construction plans were "approvable," the County DOH approved them.

The Planning Board of the Town of Kent (hereinafter the Planning Board) thereafter approved a site plan and subdivision map for the Project and Plant. However, local opposition to the Project ensued and a homeowner's group commenced a CPLR article 78 proceeding against Kent Acres and the Planning Board, seeking to annul those approvals, on the ground, inter alia, that the environmental review that had been conducted with respect to the Project had been inadequate. The City, which submitted a memorandum as an amicus curiae, supported that petition, since, according to the City, the DEP should have been, but was not, made a part of the environmental review. In the resultant judgment, the Supreme Court, which rejected the City's argument because there was "no question" that the DEP had seen and approved the Plant's construction plans, denied the petition in that proceeding.

After the homeowner's group appealed, the proceeding was settled by stipulation which was "so ordered" on December 21, 1989, following extensive negotiations between the Town and the others. Pursuant to that stipulation, Kent Acres agreed that it would, inter alia, reduce the size of the Project from 318 to 303 units and redesign the Plant so that it would discharge less phosphorous into the water supply. In addition, the Planning Board indicated that it would approve a revised site plan and subdivision map with fewer condominiums to be submitted by Kent Acres.

As a result, Kent Acres prepared revised construction plans for the Project and Plant, which were submitted to the County DOH for its approval. During the review, the County DOH contacted the DEP engineer again. When the DEP engineer, who reviewed the revised construction plans, told the County DOH that they were "approvable," the County DOH approved them.

Kent Acres received all other necessary approvals and permits from the Town by the end of 1989, and commenced construction of the Project in 1990. Several condominiums, a significant portion of the Plant, the sewage collection system, the water distribution systems, the storm water drainage system, and grading for the road network were completed. Neither the Town nor the Planning Board opposed the construction or raised any concerns at that time. However, after all these improvements,

including the partial completion of the Plant, Kent Acres had to halt construction due to its own financial issues.

The Project was held up for several years, as Kent Acres commenced a bankruptcy proceeding. That proceeding concluded when a bankruptcy reorganization plan was approved, pursuant to which Lexington Realty Development Corp. (hereinafter Lexington) agreed to buy the land from Kent Acres, and complete the development Project.

In order to secure financing for the Project, and to be able to close on the contract for the sale of the subject land, Lexington was required to ascertain the viability of the approvals and permits the Project had received. Lexington contacted the DEP to find out whether its prior oral approval of the Plant was still viable. Indeed, at that time, the Watershed Regulations not only effectively gave the DEP the power to approve the designs of new sewage disposal systems in the City's watersheds, but also how those systems were "operated and maintained" (10 NYCRR former 128.1 [c] [7]).

Notwithstanding the prior history, by letter to a representative of Lexington dated June 20, 1996, the DEP indicated that it had not approved, and was still not approving, the Plant. This was because the DEP was concerned that if the Plant was completed and put into operation, additional phosphorous would be introduced into the basin of a reservoir of the City's watersheds that already contained an unacceptable amount of the chemical. Kent Acres then commenced matter No. 1 against the City and the DEP, essentially seeking, among other things, to annul the determination denying approval of the Plant.

A few months after matter No. 1 was commenced, in 1997, the Watershed Regulations were amended by the Legislature (see 10 NYCRR part 128; 15 RCNY ch 18). In relevant part, they bestowed authority upon the DEP over numerous "regulated activities" in the City's watersheds, which, if engaged in, could contaminate the City's water supply (see 15 RCNY 18-14 [a]; 18-16 [a] [85]; 18-21; 10 NYCRR 128-1.4 [a]; 128-1.6 [a] [86]; 128-2.2). One such activity was the design, construction, and operation of any wastewater treatment plants (see 15 RCNY 18-14 [a] [6]; 18-16 [a] [23]; 18-21; 10 NYCRR 128-1.4 [a] [6]; 128-1.6 [a] [23]; 128-2.1 [a]).

The Watershed Regulations also authorized the DEP to institute an environmental protection project to ameliorate the pollution of the City's watershed, known as the "Phosphorous Offset Pilot Program" (hereinafter POPP) (see 15 RCNY 18-82 [g]; 10 NYCRR 128-8.2 [g]). The POPP authorized the construction of up to three new wastewater treatment plants that would

introduce phosphorous into the County's "phosphorous-restricted basins" (15 RCNY 18-82 [g] [4]; 10 NYCRR 128-8.2 [g] [4])—basins of reservoirs that have unacceptable amounts of the chemical in them (*see* 15 RCNY 18-16 [a] [79]; 10 NYCRR 128-1.6 [a] [80])—provided the selected developers set up an off-site phosphorous offset measure that would remove three times the amount of phosphorous that was being introduced into the basin.

In order to take advantage of the POPP, Lexington submitted an application to the DEP, seeking to have the Plant included in the POPP. The DEP conditionally approved this application. One of the conditions of approval was that Lexington obtain the consent of either the Town or the County to the Plant's inclusion in the POPP. This consent was required by the new Watershed Regulations, specifically 15 RCNY 18-82 (g) (1) and 10 NYCRR 128-8.2 (g) (1).

Accordingly, Lexington submitted a "petition" to the Town Board of the Town of Kent (hereinafter the Town Board), seeking its consent to the Plant's inclusion in the POPP. However, the Town Attorney, in a letter dated January 20, 1999, informed Lexington that the Town Board was not going to consent, as the Town Board wanted to "save" its consent for a commercial development that might be built within the Town. When the County likewise refused to consent, the DEP rescinded its conditional approval of Lexington's application to be included in the POPP.

Subsequently, Lexington joined in matter No. 1 as a plaintiff-petitioner, and the Town Board, Planning Board, and County were added as defendants-respondents, and additional relief was sought. In relevant part, Kent Acres and Lexington now joined in seeking to annul the Town Board's determination to withhold its consent to the Plant's inclusion in the POPP. In addition, Kent Acres and Lexington sought a judgment declaring that 15 RCNY 18-82 (g) (1) is invalid. Finally, Kent Acres and Lexington set forth certain causes of action against the City and the DEP to recover damages under Public Health Law § 1105 (1).

While matter No. 1 was pending, Kent Acres and Lexington contacted the DEP, seeking to alternatively have the agency "confirm" that the Plant constituted a "noncomplying regulated activity" which would avoid the necessity of complying with new and more stringent regulations for the Plant. Specifically, the Watershed Regulations essentially provided that if, at the time the Regulations were amended, a landowner was engaged in what became a regulated activity and had all the necessary,

discretionary approvals that enabled him or her to engage in that activity, the landowner would generally be allowed to continue engaging in that activity, notwithstanding the new, more stringent regulations (*see* 15 RCNY 18-27 [a] [1]; 10 NYCRR 128-2.7 [a] [1]).

By letter dated December 11, 2002, the DEP advised Kent Acres and Lexington that because the Plant had not been formally approved at the time the Watershed Regulations were amended, the Plant was not a noncomplying regulated activity pursuant to the statutory framework. As a result, Kent Acres and Lexington commenced the instant hybrid CPLR article 78 proceeding—matter No. 2—against the City and the DEP, essentially seeking to annul the DEP's determination, as well as a judgment declaring that the Plant constituted a noncomplying regulated activity.

Eventually, the parties all moved for summary judgment in their respective favors. In the resultant order and judgment, the Supreme Court, which had previously consolidated matters No. 1 and 2, found that the Town and the Planning Board were bound by the 1989 stipulation of settlement in the CPLR article 78 proceeding requiring the Town to approve the inclusion of the Plant in the POPP, and directed the Town Supervisor to execute a letter of consent. In addition, the Supreme Court, without any discussion, in effect, awarded the City and the DEP summary judgment dismissing the causes of action against them to recover damages.

Under the particular circumstances of the instant case, the Supreme Court properly directed the Town to consent to the participation of Kent Acres and Lexington in the POPP. As properly found by the Supreme Court, by entering into the 1989 Stipulation of Settlement, Kent Acres, the Town—through its Planning Board (*see* Town Law §§ 60, 65)—and the homeowners' group unequivocally and knowingly agreed to discontinue the then-pending proceeding in exchange for the downsizing of the Project and the Plant as well as all necessary approvals following that reduction. By the stipulation of settlement, which was "so-ordered" on December 21, 1989, the Town approved the revised and reduced development Project. Pursuant to the Town's approval and its legally-issued permits, Kent Acres, and then Lexington, demonstrated a commitment to the purpose for which the approvals were granted by commencing construction, effecting substantial changes in the land and incurring substantial expenses to further the development Project.

Although the Town never voted or formally authorized a resolution denying the participation of Kent Acres and Lexington

in the POPP (*see* Town Law § 63), relying instead on a letter from the Town Attorney, the Town nonetheless failed to comply with the gist of its contractual obligations under the so-ordered stipulation of settlement, when it declined through its counsel to consent to Kent Acres' participation in the POPP in 1999. Participation in the new POPP had become essentially a condition precedent to the completion of the Town's previously-approved Kent Acres development as agreed upon under the stipulation of settlement.

In light of the actions and substantial expenditures by Kent Acres and Lexington in relying upon the Town's position and previous approvals, the Supreme Court properly annulled the Town's determination to withhold consent to the Plant's inclusion in the POPP. The record amply supports the conclusion that Kent Acres and Lexington not only had sufficiently committed the land to the use authorized by the approvals and permits prior to the Town's change of position (*see Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627 [2004]; *Town of Orangetown v Magee*, 88 NY2d 41, 52-53 [1996]; *Matter of Lombardi v Habicht*, 293 AD2d 474, 475-476 [2002]), but Kent Acres had been conditionally approved by the DEP to participate in the POPP, and to construct on-site and off-site mechanisms to reduce the level of phosphorous consistent with the DEP's watershed protection program. Nevertheless, the Supreme Court correctly refused to annul the DEP's determination denying approval of the Plant prior to the completion of the POPP by Kent Acres and Lexington.

The Supreme Court also correctly declined to invalidate 15 RCNY 18-82 (g) (1). To begin with, the challenge by Kent Acres and Lexington to the validity of that regulation was untimely (*see* CPLR 217 [1]; *Via Health Home Care, Inc. v New York State Dept. of Health*, 33 AD3d 1100 [2006]; *Matter of Purcell v Travis*, 24 AD3d 824 [2005]; *Matter of Federation of Mental Health Ctrs. v DeBuono*, 275 AD2d 557, 559 [2000]), having been raised more than nine years after the enactment of the regulations in 1997 (*see* 15 RCNY ch 18; 10 NYCRR part 128). Moreover, neither Kent Acres nor Lexington demonstrated any basis for the invalidation of the rationally-based regulations (*see Matter of Levine v Whalen*, 39 NY2d 510, 518 [1976]; *Grossman v Baumgartner*, 17 NY2d 345, 349 [1966]).

Furthermore, the Supreme Court correctly declined to annul the determination of the DEP that the Plant did not constitute a "noncomplying regulated activity" within the meaning of the regulatory framework. Contrary to the contention of Kent Acres and Lexington, the DEP's determination that Kent Acres

needed its approval of the Plant at the time the Watershed Regulations were amended, and that this approval had not been given, are neither "affected by an error of law," nor arbitrary and capricious (see CPLR 7803 [3]; 10 NYCRR former 128.1 [c] [7]).

Since it is undisputed that Kent Acres and Lexington do not face condemnation and are not required to remove any buildings as a result of the DEP's enforcement of its Watershed Regulations, the Supreme Court also properly granted that branch of the motion of the City and the DEP which was for summary judgment dismissing the cause of action against them to recover damages pursuant to Public Health Law § 1105 (1) (see Ryder v City of New York, 32 AD3d 836, 838 [2006]). As the record shows that the enforcement by the DEP of those regulations did not effect a regulatory taking as a matter of law (see Tahoe-Sierra Preservation Council, Inc. v Tahoe Regional Planning Agency, 535 US 302, 342 [2002]; Penn Central Transp. Co. v New York City, 438 US 104, 124 [1978]), the Supreme Court also correctly granted that branch of the motion of the City and the DEP which was for summary judgment dismissing the cause of action against them to recover damages for a taking without just compensation (see State of New York v Sour Mtn. Realty, 276 AD2d 8, 16 [2000]; Briarcliff Assoc. v Town of Cortlandt, 272 AD2d 488, 491-492 [2000]).

The remaining contentions of Kent Acres and Lexington are without merit.

We note that since matter Nos. 1 and 2 are, in part, declaratory judgment actions, the order and judgment must contain the appropriate declaration that 15 RCNY 18-82 (g) is valid and that the Plant does not constitute a noncomplying regulated activity (see Lanza v Wagner, 11 NY2d 317, 334 [1962], appeal dismissed 371 US 74 [1962], cert denied 371 US 901 [1962]).

Motion by Lexington Realty Development Corp., inter alia, to dismiss an appeal from an order and judgment (one paper) of the Supreme Court, Putnam County, dated October 14, 2005, on the ground that it is academic. By decision and order on motion of this Court dated September 29, 2006, the motion was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.

Upon the papers submitted in support of the motion, the papers submitted in opposition thereto, and upon the argument of the appeal, it is

Ordered that the motion is denied (see Matter of Silvera v Town of Amenia Zoning Bd. of Appeals, 33 AD3d 706 [2006];

*Matter of E & J Sylcox Realty, Inc. v Town of Newburgh Planning Bd.*, 12 AD3d 445, 446 [2004]). Schmidt, J.P., Santucci, Krausman and Balkin, JJ., concur.