OPINION OF THE COURT
Melissa C. Jackson, J.
The defendant Charity James has been charged with one count of disorderly conduct (Penal Law § 240.20 [5]) and one count of violating Administrative Code of the City of New York § 10-110 (parading without a permit) arising out of her alleged participation in protest demonstrations during last summer’s Republican National Convention in New York City. The defendant now moves for an order dismissing both charges on grounds of facial insufficiency pursuant to CPL 100.40 and 170.30. In addition, the defendant challenges the constitutionality of Administrative Code § 10-110 on the grounds that the statute amounts to an impermissible prior restraint on constitutionally protected freedoms of speech and assembly. After review of the moving papers, including the defendant’s memorandum of law in support of finding Administrative Code § 10-110 unconstitutional, this court denies the defendant’s motion in all respects.
The motion arises from the following findings of fact and procedural history. The defendant was arrested on August 31, 2004 in connection with having allegedly participated in unlawful protest demonstrations during the Republican National Convention. The defendant was issued a desk appearance ticket (DAT) directing her to appear in New York County Criminal Court on October 7, 2004. The defendant appeared pursuant to the DAT and was arraigned on October 7, 2004 at which time the People filed an information charging her with Penal Law § 240.20 (5) (disorderly conduct — obstructing vehicular or pedestrian traffic) and Administrative Code § 10-110 (parading without a permit). The factual allegations in the accusatory instrument read as follows:
“Deponent {the arresting officer) states that: (i) Deponent observed over 100 other individuals, walking on the street and sidewalk, from 17th towards Fifth Avenue; (ii) deponent observed said group stop at police barricades at Fifth Avenue; (iii) deponent *365 observed the defendant behind said police barricade; (iv) the defendant’s conduct caused a public inconvenience by obstruct[ing] vehicular and pedestrian traffic and (v) the defendant and deponent did not have a written permit from the police commissioner authorizing defendant and others to parade at the above named location.”
Facial Sufficiency
We will first address that portion of defendant’s motion which seeks dismissal of the underlying charges pursuant to CPL 100.40 and 170.30. It is axiomatic that facial sufficiency is a nonwaivable, jurisdictional prerequisite to a valid prosecution. (People v Alejandro, 70 NY2d 133 [1987].) In order to be facially sufficient, an information, together with any supporting depositions, must comport with three requirements: (1) allege facts of an evidentiary character supporting or tending to support the charges, pursuant to CPL 100.15 (3); (2) provide reasonable cause to believe that the defendant committed the offenses charged in the information. “Reasonable cause to believe that a person has committed an offense” exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed (see CPL 70.10 [2]; People v Dumas, 68 NY2d 729 [1986]); and (3) include nonhearsay factual allegations, which, if true, establish every element of the offense charged. (See CPL 100.40 [1] [a]-[c].) This third requirement is what is referred to as a “prima facie” case. (People v McDermott, 160 Misc 2d 769 [Nassau Dist Ct 1994].) A prima facie case, also referred to as “legally sufficient evidence,” means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof. (See CPL 70.10 [1].)
The defendant argues that the instant accusatory instrument is facially insufficient because the allegations setting forth that the defendant caused a public inconvenience and lacked a required permit to parade are conclusory in nature. The defendant argues that the deponent’s observation of the defendant’s conduct, as set forth in the accusatory instrument, is inadequate to support either of the charges. This court disagrees. The defendant appears to have confused the level of proof needed to prove a case beyond a reasonable doubt with the level *366 of proof needed to establish a prima facie case in an accusatory instrument. The defendant’s misconception applies to both the charge of disorderly conduct and the charge of parading without a permit. The quantum of evidence which must be pleaded in an information is distinguishable from that which must be proven at trial. (People v Singh, 187 Misc 2d 465 [Crim Ct, Kings County 2001].)
Penal Law § 240.20 (5) states that a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof, he obstructs vehicular or pedestrian traffic. The factual allegations in the instant accusatory instrument set forth that the deponent observed the defendant behind a police barricade, along with a group of over 100 other individuals and that this conduct caused a public inconvenience by obstructing pedestrian and vehicular traffic. In addition, the accusatory instrument sets forth that the defendant’s conduct was done with the intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof. Since the factual allegations set forth that the deponent/arresting officer observed the defendant’s conduct, they also establish reasonable cause to believe the defendant committed this offense. Whether in fact, the defendant’s conduct, as described in the accusatory instrument, rises to the level of an intentional causing of public inconvenience by virtue of having obstructed vehicular or pedestrian traffic is an issue for trial and cannot be appropriately determined within the context of a facial sufficiency motion. At the pleading level, all that is required in order to establish a prima facie case of Penal Law § 240.20 (5) (disorderly conduct— intentional blocking of pedestrian and vehicular traffic) are allegations setting forth that a defendant was observed engaging in conduct which would give rise to a reasonable belief that the defendant committed the offense. In the instant case, the non-hearsay element is supplied by the fact that the deponent/ arresting officer observed the conduct and signed the accusatory instrument.
The defendant has also challenged the sufficiency of the charge of parading without a permit. Administrative Code § 10-110 states: “A procession, parade, or race shall be permitted upon any street or in any public place only after a written permit therefor has been obtained from the police commissioner.” An accusatory instrument which charges a violation of this statute must set forth the elements of this offense which *367 are: (1) that an individual was part of a parade, procession or race, (2) that such parade procession or race took place upon a public street or roadway, and (3) that the individual did not have a permit issued by the police commissioner to participate in such parade, procession or race. The instant accusatory instrument sets forth that the deponent observed the defendant walking with over 100 other individuals at a location near Fifth Avenue and 17th Street (a public street) and that neither the deponent/arresting officer nor the defendant had a written permit from the police commissioner authorizing the defendant and others to parade at that location. The nonhearsay element is supplied by the allegation that the deponent/arresting officer observed the defendant as an individual participating in the parade. Since all of these elements of the offense are set forth in the factual allegations and since all of the elements are established by nonhearsay allegations, specifically the observations of the deponent/arresting officer, this court finds that the accusatory instrument establishes a prima facie case of the defendant’s violation of Administrative Code § 10-110. Whether or not the defendant was an actual participant in this group or whether the actions of this group qualify as a parade or procession within the meaning of the statute are issues for trial that cannot be properly determined at the pleading level.
In People v Casey (95 NY2d 354, 360 [2000]), the Court of Appeals stated “[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading.” We conclude that the instant accusatory instrument establishes a prima facie case as to both the charge of disorderly conduct (blocking vehicular and pedestrian traffic) and parading without a permit. We also find that the accusatory instrument meets the standards set forth in Casey (supra). Accordingly, this court deems the instant accusatory instrument to be a valid information.
Lastly, although it is not relevant for the purpose of determining facial sufficiency, this court notes that the defendant does not dispute the facts as contained in the accusatory instrument in that she does not deny that she was walking with a large group or make claim that she in fact possessed a parade permit.
*368 Constitutional Challenge
We will now turn to the defendant’s constitutional challenge to Administrative Code § 10-110. The statute, in pertinent part, reads as follows:
“§ 10-110. Processions and parades.
“a. Permits. A procession, parade, or race shall be permitted upon any street or in any public place only after a written permit therefor has been obtained from the police commissioner. Application for such a permit shall be made in writing, upon a suitable form prescribed and furnished by the department, not less than thirty-six hours previous to the forming or marching of such procession, parade or race. The commissioner shall, after due investigation of such application, grant such permit subject to the following restrictions:
“1. It shall be unlawful for the police commissioner to grant a permit where the commissioner has good reason to believe that the proposed procession, parade or race will be disorderly in character or tend to disturb the public peace;
“2. It shall be unlawful for the police commissioner to grant a permit for the use of any street or any public place, or material portion thereof, which is ordinarily subject to great congestion or traffic and is chiefly of a business or mercantile character, except, upon loyalty day, or upon those holidays or Sundays when places of business along the route proposed are closed, or on other days between the hours of six thirty post meridian and nine ante meridian;
“3. Each such permit shall designate specifically the route through which the procession, parade or race shall move, and it may also specify the width of the roadway to be used, and may include such rules and regulations as the police commissioner may deem necessary;
“4. Special permits for occasions of extraordinary public interest, not annual or customary, or not so intended to be, may be granted by the commissioner for any street or public place, and for any day or hour, with the written approval of the mayor;
“5. The chief officer of any procession, parade or race, for which a permit may be granted by the police commissioner, shall be responsible for the strict observance of all rules and regulations included in said permit. . .
*369 “c. Violations. Every person participating in any procession, parade or race, for which a permit has not been issued when required by this section, shall, upon conviction thereof, be punished by a fine of not more than twenty-five dollars, or by imprisonment for not exceeding ten days, or by both such fine and imprisonment.”
The defendant’s challenge is predicated upon the argument that prosecutions pursuant to a violation of this statute constitute a prior restraint on constitutionally protected freedoms of speech and assembly and an unconstitutionally selective enforcement of the laws. The defendant argues that Administrative Code § 10-110 gives the Police Commissioner overly broad discretion as to whether or not to grant a parade permit, and that the mechanism for judicial review is inadequate. In addition, the defendant argues that Administrative Code § 10-110 (a) (4) which allows for waiver of the permit requirement for occasions of extraordinary public interest has been selectively enforced to allow politically popular organizations to obtain permits, while, denying permits to those who seek to criticize government. The defendant cites MacDonald v Safir (206 F3d 183 [2d Cir 2000]) in support of his view that the statute amounts to an impermissible prior restraint and selective enforcement. The defendant’s reliance on MacDonald v Safir (supra) is misplaced.
“Prior restraint” is defined as a governmental restriction on speech or publication before its actual expression. “Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.” (Bantam Books, Inc. v Sullivan, 372 US 58, 70 [1963].) Government “thus carries a heavy burden of showing justification for the imposition of such a restraint” (Organization for a Better Austin v Keefe, 402 US 415, 419 [1971]). The United States Supreme Court’s first encounter with a law imposing a prior restraint came in Near v Minnesota ex rel. Olson (283 US 697 [1931]) in which a five to four majority voided a law authorizing a permanent enjoining of future violations by any newspaper or periodical once found to have published an “obscene, lewd and lascivious” or “malicious, scandalous and defamatory” issue. (Id. at 701.) The Court did not undertake to explore the kinds of restrictions to which the term “prior restraint” would apply nor to do more than assert that only in “exceptional circumstances” would prior restraint be permissible. The doctrine of prior re *370 straint was called upon by the Court as it struck down a series of loosely drawn statutes and ordinances requiring licenses to hold meetings and parades with uncontrolled discretion in the licensor as to whether or not to issue them. The doctrine that gradually emerged was that permit systems, otherwise known as prior licensing, were constitutionally valid so long as the discretion of the issuing official was limited to questions of times, places and manners. (Cox v New Hampshire, 312 US 569 [1941]; Poulos v New Hampshire, 345 US 395 [1953].)
The case of Freedman v Maryland (380 US 51 [1965]) involved a state statute which required preexhibition examination of motion pictures by a state censorship board to permit a denial of a license to show the film if the board deemed it obscene. In Freedman (supra) the United States Supreme Court held that if the ordinance is a “prior restraint” on speech, certain procedural safeguards must be in place in order for the restraint to be lawful under the First Amendment. They are as follows:
“(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.” (Thomas v Chicago Park Dist., 534 US 316, 321 [2002], citing Freedman at 58.)
In MacDonald v Safir (206 F3d 183 [2d Cir 2000]), the appellant/plaintiff filed an appeal from a judgment entered in the United States District Court for the Southern District of New York (MacDonald v Safir, 26 F Supp 2d 664 [1998]), holding that challenged portions of New York City’s parade permit ordinance, Administrative Code § 10-110, did not violate the First Amendment of the United States Constitution. Appellants, an organization known as the Million Marijuana March (in conjunction with related organizations) brought a 42 USC § 1983 action in the Southern District against the New York City Police Commissioner, claiming that Administrative Code § 10-110 violates the First Amendment on the grounds that (1) it vests overbroad discretion in the Police Commissioner, (2) it does not provide the required judicial review, and (3) it fails to require the Police Commissioner to bear the burden of going to court when he suppresses speech. The United States Court of Appeals for the Second Circuit vacated the judgment of the *371 District Court, finding that the record did not support the District Court’s judgment and remanded it back for further findings as to whether the ordinance satisfies the second and third safeguards mandated by Freedman v Maryland (380 US 51 [1965]).[1] Subsequently, the appellants’ challenge to the constitutionality of Administrative Code § 10-110 was withdrawn on stipulation of both parties, as the result of a United States Supreme Court decision in Thomas v Chicago Park Dist. (534 US 316 [2002]). The ruling in Thomas, coupled with the enactment of 38 RCNY chapter 19, is dispositive of the constitutionality issue.
On June 27, 2001 (effective date July 27, 2001) title 38, chapter 19 was added to the Rules of the City of New York.[2] Title 38 is a compilation of the rules of the New York City Police Department and chapter 19 is entitled “Rules for Processions and Parades.” These rules must be read in tandem with Administrative Code § 10-110 (a). The Rules of the City of New York are incorporated in the New York City Charter and Administrative Code by sections 389, 435 and 1043 of the New York City Charter. 38 RCNY 19-01 entitled “Definitions of Disorderly Parade and Occasions of Extraordinary Public Interest” makes specific reference to both Administrative Code § 10-110 (a) and Penal Law § 240.20 (5) (disorderly conduct— obstructing vehicular or pedestrian traffic). 38 RCNY 19-02 defines a parade or procession as “any march, motorcade, caravan, promenade, foot or bicycle race, or similar event of any kind, upon any public street or roadway.” 38 RCNY 19-03 sets forth the application procedure for a parade permit. 38 RCNY 19-04 sets forth the procedure that the Police Commissioner must follow when an application for a parade permit is either approved or disapproved.
In Thomas v Chicago Park Dist. (534 US 316 [2002]), in a unanimous opinion authored by Justice Scalia, the Court denied a facial challenge to the Chicago Park District Municipal Park ordinance’s permit requirement for events involving more than 50 people. The Court reasoned that because the permit ordinance is content-neutral, it need not contain the procedural safeguards required of content-based regulations such as those described in Freedman v Maryland (supra). The Court stated:
*372 “Petitioners contend that [in order to pass constitutional muster] the ordinance must specify a deadline for judicial review of a challenge to a permit denial. We reject those contentions . . . The Park District’s ordinance does not authorize a licensor to pass judgment on the content of speech: None of the grounds for denying a permit has anything to do with what a speaker might say. Indeed, the ordinance (unlike the classic censorship scheme) is not even directed to communicative activity as such, but rather to all activity conducted in a public park. The picnicker and soccer player, no less than the political activist or parade marshal, must apply for a permit if the 50-person limit is to be exceeded. And the object of the permit system (as plainly indicated by the permissible grounds for permit denial) is not to exclude communication of a particular content, but to coordinate multiple uses of limited space, to assure preservation of park facilities, [and] to prevent uses that are dangerous, unlawful, or impermissible under the Park District’s rules.” (Thomas at 322.)
In Thomas v Chicago Park Dist. (supra), the Supreme Court set forth that a content-neutral ordinance, such as Administrative Code § 10-110, would satisfy First Amendment concerns if it specified the reason for which the permit could be denied, required explanations for denial, and placed time limits on the processing of permit applications. 38 RCNY 19-04 clearly comports with all of these requirements. Lastly, the court notes that the defendant’s memorandum of law in support of finding Administrative Code § 10-110 unconstitutional makes no mention of the ruling in Thomas v Chicago Park Dist. (534 US 316 [2002]) or the enactment of 38 RCNY 19-04.
In conclusion, the defendant’s motion to have Administrative Code § 10-110 declared unconstitutional under both the United States and New York State Constitutions is denied.

. The District Court had granted summary judgment in favor of appellant on its claim with respect to the first Freedman factor.

. This rule is promulgated pursuant to the authority of the Police Commissioner under sections 389, 435 (a) and 1043 of the New York City Charter.