*410 OPINION OF THE COURT
Melissa C. Jackson, J.
In People v James (7 Misc 3d 363 [2005]), decided January 18, 2005, this court upheld the constitutionality of New York City’s parade permit ordinance (Administrative Code of City of NY § 10-110), under both the state and federal constitutions. The defendants herein move this court to reconsider that decision in light of the Sixth Circuit’s recent decision in American-Arab Anti-Discrimination Comm. v City of Dearborn (418 F3d 600 [2005]), decided August 12, 2005. After a comparative analysis of the two statutes at issue, this court concludes that the deficiencies present in the Dearborn ordinance do not appear in Administrative Code § 10-110. Accordingly, this court declines to reconsider its finding that the New York City parade statute comports with all of the constitutional safeguards required of parade permit schemes as set forth in the United States Supreme Court’s decision in Thomas v Chicago Park Dist. (534 US 316 [2002]).
As a threshold issue, this court notes that it is bound by the United States Supreme Court’s and New York State Court of Appeals’ interpretations of the Federal Constitution. However, the interpretation of a federal constitutional question by a lower federal court serves only as useful and persuasive authority for New York state courts and is not binding on them. (People v Kin Kan, 78 NY2d 54, 60 [1991], citing New York Rapid Tr. Corp. v City of New York, 275 NY 258 [1937], affd 303 US 573 [1938].)
The defendants Matthew Namer and Daniel Terzvola were both arrested and charged with Penal Law § 240.20 (5) (disorderly conduct — obstruction of pedestrian/vehicular traffic) and Administrative Code § 10-110 (parading without a permit) stemming from their alleged participation in a “Critical Mass” bike event that took place in Manhattan last spring. “Critical Mass” is a monthly event where bicyclists spontaneously come together and ride through the public streets and thoroughfares of New York. As self-described on its Web site: “Critical Mass is not an organization, it’s an unorganized coincidence. It’s a movement ... of bicycles, in the streets” (<http://www.criticalmass.org>). The defendants argue that New York City’s parade permitting scheme (Administrative Code § 10-110, as implemented by 38 RCNY ch 19) is unconstitutional on its face, particularly in light of the Sixth Circuit’s recent decision in American-Arab Anti-Discrimination Comm. v City of Dearborn (418 F3d 600 [2005]). The City of New York, through the office of the Corporation Counsel, has moved for *411 leave to appear as amicus curiae and to submit a memorandum of law in support of the constitutionality of Administrative Code § 10-110. The City is presently engaged in affirmative litigation seeking to enjoin the violation of the parade permit requirement by participants in the monthly Critical Mass rides. Pursuant to CPLR 1012 and 1013, leave to appear amicus curiae and to file submissions is hereby granted.
In pertinent part, Administrative Code § 10-110 reads as follows:
“A procession, parade, or race shall be permitted upon any street or in any public place only after a written permit therefor has been obtained from the police commissioner. Application for such permit shall be made in writing, upon a suitable form prescribed and furnished by the department, not less than thirty-six hours previous to the forming or marching of such procession, parade or race.” (Subd [a].)
The statute further provides that
“[e]very person participating in any procession, parade or race, for which a permit has not been issued when required by this section, shall, upon conviction thereof, be punished by a fine of not more than twenty-five dollars, or by imprisonment for not exceeding ten days, or by both such fine and imprisonment.” (Subd [c].)
Accordingly, a conviction for Administrative Code § 10-110 amounts to a violation and not a crime.
Administrative Code § 10-110 is implemented by and must be read in tandem with chapter 19 of title 38 of the Rules of the City of New York.[1] Collectively, these statutes comprise New York City’s parade permitting scheme. 38 RCNY 19-01, entitled “Definitions of Disorderly Parade and Occasions of Extraordinary Public Interest,” makes specific reference to both Administrative Code § 10-110 (a) and Penal Law § 240.20 (5) (disorderly conduct — obstruction of pedestrian/vehicular traffic). 38 RCNY 19-02 (a) defines a parade or procession as “any march, motorcade, caravan, promenade, foot or bicycle race, or similar event of any kind, upon any public street or roadway.” Admittedly, the statute does not quantify the requisite number of persons necessary to constitute a parade. Nonetheless, this *412 court has previously held that the issue of whether or not an event qualifies as a parade or procession within the meaning of the statute is reserved for the trier of fact and cannot be determined within the context of a facial sufficiency motion. (See People v James, supra.) 38 RCNY 19-03 sets forth the application procedure for a parade permit. 38 RCNY 19-04 sets forth the procedure that the Police Commissioner must follow when an application for a parade permit is either approved or disapproved.
In People v James (7 Misc 3d 363 [2005]) this court rejected a constitutional challenge to Administrative Code § 10-110 that was predicated upon the following claims: (1) the provision was a prior restraint on protected speech, (2) the Police Commissioner had too much discretion in granting permits, and (3) the judicial review was inadequate. This court found the statute to be “content-neutral” meaning that the ordinance does not seek to restrict the issue, message or subject matter content of the proposed parade. This court further held that a content-neutral ordinance will satisfy First Amendment concerns if it specifies the reasons for which a permit can be denied, requires explanations for denial, and places time limits on the processing of permit applications in accordance with the United States Supreme Court ruling in Thomas v Chicago Park Dist. (534 US 316 [2002]). This court concluded that when Administrative Code § 10-110 is read in conjunction with 38 RCNY chapter 19, all of the Thomas v Chicago Park criteria are met.
The defendant herein now urges this court to reconsider its ruling in James in light of the recent Sixth Circuit decision in American-Arab Anti-Discrimination Comm. v City of Dearborn (418 F3d 600 [2005]). In that case, the Sixth Circuit reversed a judgment of the United States District Court for the Eastern District of Michigan in favor of the defendant City of Dearborn, Michigan, which had found a municipal ordinance (Code of Ordinance of City of Dearborn, Mich §§ 17-26 — 17-32) that regulates parades on the city streets and sidewalks to be constitutional.[2]
We turn now to a comparative analysis of those portions of the Dearborn ordinance found to be unconstitutional with their counterpart provisions in the New York City parade permitting scheme. We will begin by noting that both ordinances were *413 deemed “content-neutral” by the litigating parties and that the constitutional challenges were predicated upon other grounds.
The Dearborn ordinance required any and all speakers to apply for a permit 30 days in advance. In declaring this provision of the ordinance unconstitutional, the Sixth Circuit found that the defendant City failed to demonstrate that they needed 30 days to prepare for a parade or special event. In fact the court specifically cited the New York City ordinance in its examples of municipalities that require substantially less time. (See American-Arab Anti-Discrimination Comm. v City of Dearborn, 418 F3d 600, 606 n 2 [2005].) 38 RCNY 19-04 (c) (iv) provides that applications may be filed as little as 36 hours before a special event and section 19-04 (c) (v) further provides that applications may be filed less than 36 hours before, where exigent circumstances exist. Moreover, the Sixth Circuit described the 30-day notice provision as the salient issue before it, evincing the importance of the 30-day notice provision as a factor in reaching its decision. Lastly, while the City of Dearborn argued that it did regularly allow exemptions to the 30-day notice requirement, the court noted that there was no waiver provision written into the statute.
The second provision of the Dearborn ordinance found to be unconstitutional was a section entitled “DEFINITIONS” which read as follows: “For the purpose of this Ordinance, the term ‘special event’ shall be deemed to include any walkathon, bikeathon, or jogging group, or other organized group having a common purpose or goal, proceeding along a public street or other public right-of-way in the City of Dearborn.” (Id. at 603.) The Sixth Circuit found this provision overly broad because virtually any group of two or more persons walking on a public right-of-way with a common purpose or goal would presumably be required to possess a permit under the ordinance. However, the court focused on the wording organized group having a common purpose or goal in reaching this finding. The court noted that this language could apply to virtually any group of people traveling on the public rights-of-way, and as such was overly broad. The Sixth Circuit concluded that this section of the ordinance was unconstitutional on its face. (American-Arab Anti-Discrimination Comm. v City of Dearborn, supra at 608.) However, the court noted when an ordinance gives examples of organized groups with common purposes and goals, such as walkathons and bikeathons, “[t]he inclusion of examples further alleviates vagueness problems, and narrows the discretion of city officials” (418 F3d 600, 609 [2005]).
*414 The New York City ordinance includes specific examples of the type of events requiring a permit and does not contain any ambiguous terminology which could be applicable to small innocuous groups. 38 RCNY 19-02 (a) defines a parade or procession as any “march, motorcade, caravan, promenade, foot or bicycle race, or similar event of any kind, upon any public street or roadway.” The language bicycle race, or similar event clearly encompasses “Critical Mass.” While the term parade is not quantified, 38 RCNY 19-02 (d) states that a “ ‘[demonstration’ shall mean a group activity including, but not limited to, a meeting, assembly, protest, rally or vigil, moving or otherwise, which involves the expression of views or grievances, involving more than 20 people.” While the Rules quantify a “demonstration,” it is noteworthy that the word demonstration does not appear anywhere else in either chapter 19 of title 38 of the Rules of the City of New York or in Administrative Code § 10-110. The Rules’ use of the term demonstration, with its concomitant requirement that it consist of more than 20 persons, evinces an intent that demonstration be used interchangeably with the words parade or procession or any of the other terms set forth in section 19-02 (a) including a bicycle race. This is further supported by the fact that demonstration is a synonym for parade.[3] Accordingly, it could be argued that the requirement that a “demonstration” consist of 20 or more persons was intended to apply to parades and bicycle events as well.
Generally, in the construction of statutes the intention of the Legislature (in this case the city agencies responsible for the enactment of the Administrative Code and Rules of City of New York) is first to be sought from a literal reading of the act itself or of all the statutes relating to the same general subject. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) The legislative intent in the promulgation of 38 RCNY chapter 19 is set forth in a footnote to the chapter’s title, “Rules for Processions and Parades.” In sum and substance, this note sets forth that the rule was promulgated to authorize the New York City Police Department to regulate the movement of vehicular and pedestrian traffic and that proper regulation of parades and processions is essential to protecting the health, welfare and safety of the inhabitants of New York City. The footnote states “THESE PROCEDURES ARE INTENDED TO PROVIDE A FRAMEWORK FOR THE POLICE DEPARTMENT TO ASSURE THE SAFETY AND CONVENIENCE OF THE PUBLIC WHILE AL *415 LOWING THE CITIZENS TO EXERCISE THEIR RIGHTS TO ASSEMBLE AND MARCH ON PUBLIC STREETS.” This court finds that the enactment of Administrative Code § 10-110 and the promulgation of 38 RCNY chapter 19 were clearly intended to encompass large events such as Critical Mass bike rides, whether they be spontaneous or organized. Such regulation is constitutionally permissible since it has long been recognized that requiring permits for marches or parades proceeding on public rights-of-way constitutes a legitimate exercise of governmental authority. (Cox v New Hampshire, 312 US 569 [1941].) We conclude that unlike the Dearborn ordinance, the definition of a parade found in section 19-02 (a) provides sufficient protection against small groups of pedestrians or cyclists being targeted. Lastly, it should be noted that this court has previously held that the question of whether or not an event qualifies as a parade is an issue for the trier of fact.
The last infirmity that the Sixth Circuit found in the Dear-born ordinance was the strict liability provision. The court noted that since the ordinance contained no mens rea requirement, an individual could be held liable for a criminal offense whether or not he knew that no permit had been obtained for the parade or event. The penalty for violation of the Dearborn ordinance was “a fine not exceeding the sum of $500 or imprisonment. . . not exceeding ninety days or both” (418 F3d at 603). In New York State, a violation of the Dearborn ordinance would amount to a misdemeanor. Unlike the Dearborn ordinance, the penalty for a violation of Administrative Code § 10-110 is “a fine of not more than twenty-five dollars, or . . . imprisonment for not exceeding ten days, or . . . both.” (Subd [c].) Black’s Law Dictionary (8th ed) defines mens rea as “criminal intent or recklessness.” Administrative Code § 10-110 is a violation, not a crime, and therefore the term mens rea becomes inapplicable to this statute.
In conclusion, this court reaffirms its finding that New York City’s parade permitting scheme (Administrative Code § 10-110 as implemented by 38 RCNY ch 19) pieets all of the requirements to pass constitutional muster on both the state and federal levels. Accordingly, this court denies the defendant’s request to reconsider its holding in People v James (7 Misc 3d 363 [2005]).

. This rule is promulgated pursuant to the authority of the Police Commissioner under sections 389, 435 (a) and section 1043 of the New York City Charter.

. It should be noted that although the Sixth Circuit reversed the District Court’s ruling in all other respects, the court affirmed the ruling that two sections of the ordinance were not void for vagueness.

. Roget’s New Millennium Thesaurus, First ed (version 1.1.1).